[No. 10051.   Department Two.   September 13, 1912.]

# R. K. TAYLOR, *Appellant*, v. ED HOWARD *et al Respondents*.[1]

CONTRACTS—COERCION—CONSIDERATION — VALIDITY.   Where plaintiff had paid out $300 to release a collateral note of $750, in consideration of which defendant was to give plaintiff a guaranty note for $300, and the $750 collateral note having come into the defendant's possession, he refused to surrender it or give the guaranty note until plaintiff had promised to pay a third party $200, such promise was coerced and void as without valid consideration.

GUARANTY—CONDITIONS PRECEDENT.   A promise by defendant to pay plaintiff any sum up to $300 which, on final settlement between plaintiff and a third person, might be found due to the plaintiff, cannot be enforced until a final settlement in which a sum is found due the plaintiff.

FRAUDS, STATUTE OF—PROMISE TO PAY DEBT OF ANOTHER.   An oral promise by defendant to pay plaintiff any sum up to $300 which, on final settlement between plaintiff and a third person, might be found due to the plaintiff, is within the statute of frauds.

FRAUDS, STATUTE OF—DEFENSES—PLEADING — NECESSITY.   Where the complaint in an action upon an oral contract guaranteeing the debt of another alleged the loan of money in general terms without disclosing the true foundations of the case, the defendant may, under the plea of the general issue, take advantage of the statute of frauds; although ordinarily he could not do so without specially pleading it.

Appeal from a judgment of the superior court for Island county, Still, J., entered September 9, 1911, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action for money loaned. Affirmed.

*William Sheller*, for appellant.

*Robert McMurchie*, for respondents.

ELLIS, J.—The plaintiff brought this action to recover the sum of $300, and interest thereon at the rate of six per cent per annum from January 18, 1910, upon which date the

[1] Reported in 126 Pac. 423.

complaint alleges the defendant Ed Howard borrowed that sum from the plaintiff for the use of the marital community composed of the two defendants. The answer denied these allegations of the complaint, and contained certain affirmative matter which was, in turn, put in issue by the reply, which also set up additional affirmative matter. It will be unnecessary to notice these affirmative allegations further than to state that they outline the evidentiary matter on either side which might as well have been adduced on the general issue. The cause was tried to the court without a jury. From a judgment in favor of the defendants, the plaintiff has appealed.

The findings of the court, to which the appellant's exceptions were directed and the making of which are assigned as error, cover the vital questions of fact and may be synthesized as follows:

That on January 18, 1910, there was between the plaintiff and one Hugh McLeod an open account, each claiming that the other owed him a sum in excess of $300; that, prior to that time, McLeod, as agent for the plaintiff, had effected a sale of certain lands of the plaintiff, and had taken as first payment thereon a note for $750 payable to his own order, signed by one Thomas and one Wallingford, and had hypothecated the note with the Bank of Coupeville to secure a loan to himself of $300; that thereafter and prior to January 18, 1910, Thomas paid to the plaintiff the purchase price of the land, $1,000 in money and $3,500 in notes secured by mortgage that, pending the redelivery to him of the $750 note, Thomas withheld one note for $1,000 secured by the mortgage and refused to deliver it until the $750 note should be surrendered; that McLeod being unable to pay his loan from the bank and obtain the collateral note, he and the plaintiff went to the defendant Ed Howard, a mutual friend, and McLeod represented to the defendant Howard that the plaintiff owed McLeod a sum in excess of $300; that it was then agreed among the three that the plaintiff should pay

McLeod's debt to the bank and take up the collateral note, and Howard would give the plaintiff his promissory note for the sum of $300 as a guaranty of repayment to the plaintiff of any sum the plaintiff should be found to have lost upon final settlement between plaintiff and McLeod by reason of his paying McLeod's debt to the bank; that the plaintiff then paid McLeod's debt to the bank, redeemed the collateral note, and obtained from Thomas the $1,000 note secured by the mortgage; that in December, 1909, and while the controversy existed between the plaintiff and McLeod as to mutual claims of indebtedness, the plaintiff borrowed from McLeod $200; that, after the plaintiff had paid McLeod's debt to the bank and redeemed the collateral note, it was mutually agreed between plaintiff, defendant Howard, and McLeod that, before the plaintiff should be entitled to receive the guaranty note from Howard or any payment from Howard on account of these transactions, the plaintiff should repay to McLeod the loan of $200; that the plaintiff never repaid to McLeod the $200 and never intended to repay it. The court also found that there was no consideration passing to Howard from either McLeod or the plaintiff or otherwise for the promise made by Howard to the plaintiff.

A reading of the statement of facts convinces us that all of these findings save one are substantially correct as sustained by a fair preponderance of the evidence, which is extremely conflicting. The finding that the $200 given by McLeod to the appellant in December, 1909, was given as a loan is not so sustained. We think the evidence fairly shows that it was given as a payment on account of indebtedness which the plaintiff was then insisting existed in his favor from McLeod. The evidence also shows that the later agreement of the plaintiff to repay to McLeod this $200 before he should be entitled to receive from the respondent Ed Howard the promised note of guaranty for $300 was in a sense coerced. When the appellant paid McLeod's debt of $300 to the bank to release the $750 note which McLeod had hypoth-

ecated as security, he did so through one Swain, who, on receiving the $750 note from the bank, delivered it either to McLeod or to Howard. When the plaintiff demanded this note in order to surrender it to Thomas and Wallingford in return for the $1,000 note which they were withholding, McLeod and Howard declined to deliver the $750 note until the appellant had agreed to repay the $200 to McLeod as a condition precedent to his right to receive from Howard the $300 note of guaranty which had prior to that time been promised to him without any such condition. It seems clear, therefore, that this later promise of the plaintiff to repay the $200 to McLeod was a coerced promise, without valid consideration, and void. The respondent, therefore, could not rely upon the failure to pay this $200 as a defense to this action.

But the other facts found by the court, and which we find were supported by the evidence, are sufficient to preclude a recovery by the appellant. The promise of the respondent was a promise to repay to the appellant any sum up to $300 which, on final settlement between plaintiff and McLeod, might be found due from McLeod to the plaintiff. The note was to be given as securing this guaranty. There was some evidence that the note was written, but there is no evidence that it was ever signed by the respondent Ed Howard, and there is no claim that it was ever delivered to the appellant or to any one for him. On this state of facts, there are two sufficient reasons why the appellant could not recover. In the first place, there was no evidence that there has ever been a final settlement between the appellant and McLeod in which any amount was found due from the latter to the former. In the second place, the respondent's promise was to pay the debt of another, and never having been reduced to writing, it falls within the statute of frauds.

The appellant contends that the defense of the statute of frauds was not available because not pleaded. This is unquestionably the general rule, but the case before us falls

within an exception which we think rests in sound reason and is supported by what we conceive to be the weight of authority. The appellant alleged a loan of money in general terms without disclosing the true foundations of his case as developed by his evidence. It seems only reasonable that under these circumstances a defendant should not be held to a greater particularity of pleading than that required of the plaintiff. The defendant should not be required to anticipate the plaintiff's evidence and meet it by a special plea of the statute. When the evidence develops the applicability of the statute, the defendant should be permitted to take advantage of that fact under the general issue presented by his answer. Browne on the Statute of Frauds, after stating the general rule, announces the exception as follows:

"To this rule, however, an exception must be made where the plaintiff sues on the common counts, and therefore does not disclose the foundation of his case until he puts in his evidence. Under these circumstances, the defendant will be allowed to insist upon this statutory privilege, although his pleading has not in terms done so." Browne, Statute of Frauds (5th ed.), § 508, p. 628.

And again the same text says:

"Where the bill alleges only an oral agreement, and the answer denies it, it has been held that this excludes oral proof of the agreement in issue.

"In the next place, a defendant may insist upon the benefit of the statute by plea of the general issue, or in equity by answer simply denying the fact of the agreement which the plaintiff charges to have been made. This puts the plaintiff to proof of the agreement at the trial or hearing, and he then must produce a writing." Browne, Statute of Frauds (5th ed.), §§ 510, 511, p. 630.

This court has recognized this exception in at least one case. Nichols v. Oppermann, 6 Wash. 618, 34 Pac. 162. The article on the statute in 20 Cyc. recognizes the exception in more guarded terms, but cites many authorities from many states sustaining it.

"If plaintiff declares generally on a contract within the scope of the statute of frauds without alleging whether or not it is in writing, defendant may set up the statute by special plea in bar; and if he fails to deny or expressly admits the making of the contract, he cannot have the benefit of the statute unless he sets it up specifically in his pleadings. Where defendant, in answer to general allegations, denies the making of the contract, the question whether he must also plead the statute in order to have the benefit of it arises; and on this point there is a great conflict of authority. In certain jurisdictions it has been held that he must plead it; but, at other times, in the same states, and in other jurisdictions, he has been allowed, under the general issue or a denial of the contract, to obtain the benefit of the statute at the trial." 20 Cyc. 313, 314.

Notwithstanding the admitted lack of harmony in the adjudicated cases, we think the exception rests in sound reason. The answer of the respondent raised the general issue, and while it also set up other evidentiary matter, everything pleaded might have been presented under the denial. The evidence showed that the respondent's promise was to pay McLeod's debt. It also showed that the promise was not in writing. This did not appear in the complaint. Under his denials, the respondent was entitled to avail himself of the statute of frauds as a defense.

The judgment is affirmed.

Mount, Morris, Chadwick, and Fullerton, JJ., concur.