[No. 21294.    Department Two.    July 18, 1928.]

NATIONAL GROCERY COMPANY, *Respondent*, v. MARYLAND CASUALTY COMPANY, *Appellant*, H. A. KUCKENBERG *et al., Defendants.*[1]

[1] HIGHWAYS (33)—CONTRACTOR'S BOND—CLAIMS SECURED—"GROCERIES." Rem. Comp. Stat., § 1159, providing for a claim against the contractor's bond on public highway work, by all persons furnishing "provisions and supplies" for carrying on the work, covers a claim for provisions supplied to the contractor for its boarding camp, consumed by the men employed, where the camp was necessarily operated by the contractor because of the inaccessibility of the location, and not for profit.

Appeal from a judgment of the superior court for King county, Douglas, J., entered February 21, 1928, upon findings in favor of the plaintiff, in an action upon a contractor's bond for protection of materialmen upon a state bridge contract, tried to the court. Affirmed.

*Roberts, Skeel & Holman,* and *Elwood Hutcheson,* for appellant.

*Bronson, Jones & Bronson,* for respondent.

HOLCOMB, J.—This case presents for decision the question: Is the surety on a contractor's statutory bond on public work, given pursuant to Rem. Comp. Stat., § 1159 [P. C. § 9724], liable for groceries furnished to the contractor for use in a cook house or boarding house operated by the contractor at the site of the work?

The trial court held the surety liable and entered judgment accordingly.

There is no substantial dispute in the facts.

On January 13, 1926, H. A. Kuckenberg and Andrew Wittman, copartners doing business as Kuckenberg-

¹Reported in 269 Pac. 4.

Wittman Co., and Booth & Pomeroy, Inc., a corporation, entered into a written contract with the state of Washington whereby they agreed to do all of the work and furnish all materials for the construction of the Vantage Ferry bridge over the Columbia river in Grant and Kittitas counties. By the terms of the contract, the contractors agreed to, and did, furnish to the state a bond, with appellant as surety, conditioned as provided by law, among other things, that the contractors should fully perform all of the terms and conditions of the contract. Both the partners and the corporation who made the contract were designated as one principal in the bond.

There was an agreement between Booth & Pomeroy, Inc., and Kuckenberg-Wittman Co., that, as between them, Kuckenberg-Wittman Co. should run the construction camp, which included the cook house and the bunk house.

In accordance with that agreement, Kuckenberg-Wittman Co. constructed a mess house with an attached kitchen, a meat house, a vegetable house, and seven bunk houses for the men. They undertook to run the camp for the men to be employed on the work, because there were no other boarding or camp accommodations for an average camp of one hundred and fifty men at any place closer than Ellensburg, thirty-five miles distant from the location of the bridge to be constructed; and because it was impractical for anyone working on the bridge to go back and forth to Ellensburg. They personally undertook the operation of the camp in preference to having anyone else construct and operate it, for the reason that, if operated by others, they would have no control over it, and for the further reason that meals furnished in a camp operated by others would not be satisfactory to the men employed. The camp in question was not con-

structed or operated for the purpose of making a profit, but solely for the purpose of enabling the contractors to carry out the contract with the state. Vantage Ferry is in a very sparsely settled district, there being only a few farm houses within any considerable distance from it, excepting a few buildings located at Vantage Ferry itself.

The contractor Kuckenberg-Wittman Co., on behalf of itself and co-contractor, purchased from respondent herein groceries and supplies, as found by the trial court and sustained by the evidence, of the reasonable value of $3,423.83. The trial court also found that the supplies and groceries so furnished were all consumed by the men employed, except to the extent of $95.21, during the construction of the bridge in carrying out the contract, and were necessary and vital in the carrying out and performing of the contract; and further, that the board and lodging of the men was not undertaken, conducted or run for profit, and no profit was made by the contractors on the boarding of the men or on the operation of the camp.

The court also found that, upon demand being made for the payment of the amount above stated, payment was refused, and that within the statutory time respondent filed its proper claim against the bond with the highway committee of the state and with the state highway engineer.

No error is assigned by appellant upon any of the findings made by the trial court.

Without setting out Rem. Comp. Stat., § 1159, in full, after requiring the taking of such bond as was given in this case, to be conditioned for the faithful performance of all the provisions of such public contract and the payment of all laborers, mechanics, subcontractors and materialmen, it also provides for the security of the payment of

" . . . all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work."

[1] The bond given by appellants, after securing the performance of all matters and things undertaken by the contractor to be performed under the contract upon the terms proposed and within the prescribed time therein, and indemnifying the state against damages suffered or claimed for injuries to persons or property, stipulated that the principal,

" . . . shall pay all laborers, mechanics, subcontractors and material men and all persons who shall supply such contractor or subcontractor with provisions and supplies *for the carrying on of such work.*"

Appellant lays great stress upon the last words of the above quoted portion of the bond, asserting that they apply only to persons who supply such contractor or subcontractor with provisions and supplies *for the carrying on of such work.*

It is insisted that the work to be carried on was the building of the bridge, and that the groceries furnished were not furnished for the building of the bridge and did not and could not enter into the completed improvement.

Appellant seeks to distinguish this case from our decision in *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337, where we held that, among other things, feed supplied the contractor on public work for feeding his horses used in the work was covered by the bond furnished, upon the grounds that the statute was different prior to 1915 and that that case was decided upon the Laws of 1909, p. 716, as then codified in Rem. & Bal. Code, § 1159, under which statute a bond was required to secure not only all persons furnishing provisions and supplies for the carrying on of such work, but also "all just debts, dues.

and demands," incurred in the performance of such work.

In that case, we considered and defined the provision of the statute relative to provisions and supplies for the carrying on of such work in addition to labor and material, distinguishing former cases under statutes relating to mechanics' and material men's liens and like cases from other courts, and held that under the statute providing for the security of payment for provisions and supplies furnished for the carrying on of such work, coal furnished for fuel for a steam shovel used in excavating by the contractor, and hay and grain furnished to feed the horses used upon the construction by the contractor, were included within the terms, "provisions and supplies."

We have held that groceries and meats were not included within the word "materials" under our lien statutes then in force, and that the title of an act of 1893 [Laws of 1893, p. 32] providing for the enforcement for liens of laborers and material men was not broad enough to render a railroad contractor liable for provisions furnished him in the prosecution of the work. *Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106.

We have also several times held that "materials" must be something that enters into the structure subject to a lien. *United States, Use of Standard Furniture Co. v. Aetna Indemnity Co.*, 40 Wash. 87, 82 Pac. 171; *Standard Boiler Works v. National Surety Co.*, 71 Wash. 28, 127 Pac. 573, 43 L. R. A. (N. S.) 162; *Mitchell v. Berlin-McNitt Co.*, 91 Wash. 582, 158 Pac. 264.

It is true that, in the *Standard Boiler Works* case, *supra*, something was said to indicate that the decision in the *National Surety Co.* case, *supra*, was distinguished and limited in its application; but there was

nothing involved in the *Standard Boiler Works* case but the question of whether necessary repairs on a steam shovel, which had been rented by the contractor, was covered by the statute and the bond, and we held that those things were things included in the things to be furnished by the contractor and did not come within the protection of the law or the bond.

"Provisions" are generally defined to be: Food for man; victuals; articles of provision. Bouviers' Law Dictionary, and Webster's International Dictionary.

The conditions existing in this case were very similar to the conditions existing in a case decided by the supreme court of the United States, which is criticized by appellant, but we think improperly. *Brogan v. National Surety Co.*, 246 U. S. 257. There, a public construction undertaken was, as found by the lower court and the supreme court, "in a comparative wilderness at some distance from any settlement." There were no hotels or boarding houses, and the contractor was compelled to provide board and lodging for its laborers.

Under a Federal statute so requiring, as does ours, a bond was executed by the surety company, which bound the contractor to make full payment to all persons supplying him with labor or "materials" in prosecution of the work provided for in the contract. It will be noticed that, in that case, only "labor or materials" were secured. In this case labor, materials, provisions and supplies were secured. Our statute is much more comprehensive. In that case, the supreme court held that the furnishing of board and lodging to the laborers was necessary to the performance of the contract and therefore became an integral part of the work, necessarily involved in it, and so were "materials," used "in the prosecution of the work," as provided by the statute and contemplated by the bond.

It was held to be similar to the supplying of coal to operate engines or dredges, just as we held in *National Surety Co. v. Bratnober Lum. Co., supra.* The judgment of the circuit court of appeals, disallowing recovery against the surety company *(National Surety Co. v. United States,* 228 Fed. 577), was reversed and judgment directed against the surety company. That case is also authority against appellant's contention as to the limited meaning of the words, "for the carrying on of such work," for the meaning is the same as "in the prosecution of the work."

As to the above decision by the United States supreme court, appellant contends that it has been criticized by other state courts and that state courts are not bound to follow it.

We concede that state courts are not bound to follow that court on constructions of Federal statutes and obligations arising thereunder in construing state statutes and obligations.

Examination of the cases cited by appellant, thought to criticize that decision, shows that, generally, they merely followed their own statutes and precedents in deciding cases before them. See *Standard Oil Co. v. Remer,* 170 Minn. 298, 212 N. W. 460; *Westling v. Republic Casualty Co.,* 157 Minn. 198, 195 N. W. 796; *Southern Surety Co. v. Hotchkiss,* 187 Wis. 227, 201 N. W. 986; *Gary Hay & Grain Co. v. Fidelity & Deposit Co.,* 69 Mont. 111, 255 Pac. 722; and *Watkins v. United States Fidelity & Guaranty Co.,* 138 Miss. 388, 103 South. 224.

We ourselves have held that there is a distinction between "materials," as used in lien statutes, and "provisions and supplies," such as groceries, meats, etc., as used in the statutes requiring bonds of this character, and that a more liberal rule is followed allowing recoveries for items in an action on a bond

of a contractor doing public work than in an action to foreclose a lien. *Mitchell v. Berlin-McNitt Co., supra.*

The editors of A. L. R. in case notes to *Franzen v. Southern Surety Co.*, 35 Wyo. 15, 246 Pac. 30, 46 A. L. R. 496, say:

"It is generally held that groceries, provisions, supplies, etc., furnished a contractor for a public work, and necessarily used and consumed by the men during the progress of the work, are materials within the meaning of a statutory bond conditioned for the payment for all labor or materials used in the performance of the contract."

Cases are then cited to support above statement from the decisions of the United States supreme court, California, Colorado, Minnesota, Oregon, Tennessee, Texas and Virginia.

The cases cited in A. L. R., *supra,* have been examined and found to support the statement.

We are satisfied that the spirit of our own decisions under our statutes are in accord, except that "material" is much more limited by our decisions, with the principles involved in the decision of the supreme court of the United States in the *Brogan* case and of our own *Bratnober* case.

Other minor objections to small items included in the recovery are made, which we have considered and find without merit.

The decree is therefore affirmed.

Fullerton, C. J., Main, Askren, and Beals, JJ., concur.