[No. 23242.  *En Banc.*  May 4, 1932.]

LULU F. ROGERS *et al., Appellants,* v. R. L. ROWLAND, *et al., Respondents.*[1]

*Marion Garland,* for appellants.
*Hyland, Elvidge & Alvord,* for respondents.

MAIN, J.—Bert Rogers and wife brought an action for a money judgment against the defendant R. L. Rowland, and for the establishing of a claim against his bond upon a highway contract.  Jacob Olderness and wife brought an action for the same purpose.  The two actions were, by stipulation, consolidated.  The

[1]Reported in 10 P. (2d) 988.

trial was to the court without a jury, and resulted in a judgment dismissing the actions and disallowing any claim against the bond. From this judgment, Mr. and Mrs. Rogers and Mr. and Mrs. Olderness appeal.

May 31, 1929, R. L. Rowland entered into a contract with the state, by and through the highway department, for the clearing, grubbing, grading and surfacing of four or five miles of highway in Kitsap county. The Metropolitan Casualty Insurance Company was surety upon Rowland's bond. On the same day that the contract was made with the highway department, Rowland entered into a contract with one Alex Gatooty for the clearing and grubbing. This contract, as was contemplated, was signed by six other persons who became associated with Gatooty. Some other men, not signing the contract, became associated with Gatooty and the others who did sign, and worked upon the same basis as those signing the contract.

On or about June 5, 1929, Gatooty and the others began the work of clearing and grubbing, as contemplated by the contract. Some of these men engaged room and board with Mr. and Mrs. Rogers, in the town of Manchester, which was two or three miles from the place where the work was being performed. Others of them engaged rooms in a hotel or rooming house operated by Mr. and Mrs. Olderness, and these took their meals at a restaurant conducted by Josephine Cook, who assigned her claim to Mr. and Mrs. Olderness, and it was embodied in their complaint as a second cause of action. The room and board of the men not being paid for, the appellants sought out Mr. Rowland to inquire about getting their money, and something over five hundred dollars was paid to Mr. and Mrs. Rogers at one time and taken out of the money that was coming to Gatooty and the men associated with him. From

time to time, as the work progressed, Rowland advanced to the men, upon their request, certain sums of money.

Early in November, 1929, the men, desiring further advances, requested the same of Rowland, and upon investigation, he ascertained that they had been overpaid for the work that had then been done, and refused to make the advances. The men thereupon quit, and refused to perform any further work upon the road.

There is no dispute as to the amount claimed by any of the parties for the room or board furnished by the appellants. Mrs. Cook's account for the meals amounted to $414.13; Mr. and Mrs. Olderness' for lodging, $176; and Mr. and Mrs. Rogers, for board and lodging, $1,089, upon which $555.55 had been paid. Each of the parties furnishing room or board filed a claim with the state highway department against the bond of Rowland as contractor for the amount which was respectively due each of them. It will be assumed, but not decided, that the contract between Rowland on one side and Gatooty and the others on the other side, made the latter employees and not independent contractors.

The first question to be determined is one of fact, and that is whether Rowland, when approached by the appellants with reference to getting their money for the room and board which they had furnished, made a direct promise to the effect that he would pay the same. Upon this question, the evidence was oral, and was directly conflicting.

Mr. and Mrs. Rogers, Mr. and Mrs. Olderness and Mrs. Cook testified that Rowland had made the direct promise, and they were corroborated to some extent by Gatooty and by Lenna M. Martin, who was an employee of Mr. and Mrs. Rogers. Rowland repeatedly testified unequivocally that he made no direct promise,

but that he told the parties from time to time, when they were seeking their money, that the men were working under contract, and, as far as he was then able to determine, were going to make some money; and, if signed orders were presented to him showing the amounts due for room and board of the men and the men had sufficient money coming to them, he would pay the orders. Rowland, in some material particulars, was corroborated by M. Lunsford, his superintendent upon the job, and George D. Thompson, the engineer employed by him. The testimony of some of the appellants is in conflict with the testimony of Lunsford and Thompson in some material particulars.

The trial court gave earnest consideration to this testimony, as appears by the record, and filed a memorandum opinion to the effect that the appellants were not entitled to recover because of the statute of frauds.

Section 5825, Rem. Comp. Stat., provides: "(2) every special promise to answer for the debt, default, or misdoings of another person;" shall be void,

". . . unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized."

If Rowland made a direct promise, such as the testimony of the appellants indicated, then the statute would have no application. On the other hand, if Rowland merely promised them that he would pay their claims out of the money coming to the men, if they had money for that purpose, this would be a contingent promise to pay the debt of another, and, not being in writing, would be void. *Barto v. Phillips,* 28 Wash. 482, 68 Pac. 895; *Taylor v. Howard,* 70 Wash. 217, 126 Pac. 423; *Seiffert Co. v. Wright,* 108 Wash. 616, 185 Pac. 577.

The trial court, in holding that the statute of frauds prevented a recovery, necessarily rejected the theory supported by the testimony of the appellants and their witnesses and adopted that supported by the testimony of Rowland and his witnesses. ·The trial court saw and heard all of these witnesses, and was in a much better position to weigh and give effect to their testimony than are we from a reading of the record.

After giving diligent consideration to all the evidence in the case, as it appears in the statement of facts, we are of the opinion, notwithstanding the fact that a greater number of witnesses supported the theory of the appellants, that the trial court properly weighed the evidence and reached the correct conclusion. The promise of Rowland being collateral and contingent, and not direct, there can be no recovery against him.

The next question is whether the appellants had a right to claim against the bond of the contractor. Section 1159, Rem. Comp. Stat., in part, provides that all persons who shall supply a contractor or subcontractor upon public work with "provisions and supplies" for the carrying on of such work may have recourse against the bond which that section of the statute authorizes. The question then is whether the board and room furnished Gatooty and the men associated with him by the appellants were "provisions and supplies" for the carrying on of the work. The work to be performed was not in a distant or inaccessible place where it would be difficult for the men to find room and board and yet be within sufficiently close proximity to the. work. There were other rooming and boarding houses equally as available as were those operated by the appellants. In *Brogan v. National Surety Co.*, 246 U. S. 257, construing an act of Con-

gress which the court said meant the same thing as the statute of this state, it was held that groceries and provisions furnished a contractor, consumed by the laborers, were materials used "in the prosecution of" the work, within the meaning of the act of Congress and the bond given to secure the contract, because of the special circumstance that the work was being performed in an inaccessible place where there were no hotels or boarding houses, and the contractor was required to provide board and lodging for the laborers. It was there said:

"The Circuit Court of Appeals deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond. The bare fact that the supplies were furnished to the contractor and were consumed by workmen in its employ would have been immaterial. A boarding house might be conducted by the contractor (like some company stores concerning which states have legislated, *Keokee Coke Co. v. Taylor,* 234 U. S. 224) as an independent enterprise undertaken solely in order to utilize the opportunity for separate and additional profit afforded by the congregation of many laborers in the particular locality where the public work is being performed. The laborers might resort to such a boarding house in the exercise of individual choice in the selection of an eating place. Under such circumstances the furnishing of supplies would clearly be a matter independent of the work provided for in the contract and would not entitle him who had furnished the groceries used in the boarding house to recover on the bond. But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate

engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work.''

In *National Grocery Co. v. Maryland Casualty Co.,* 148 Wash. 387, 269 Pac. 4, 65 A. L. R. 256, that case was followed, and it was held that the statute, above cited, providing for a claim against the contractor's bond, upon public highway work, by all persons furnishing provisions and supplies, covered a claim for provisions supplied to the contractor for its boarding camp and consumed by the men employed, where the camp was necessarily operated by the contractor, because of the inaccessibility of the location, and not for profit.

Both of those cases distinctly held that the groceries and supplies furnished would be a claim against the bond solely on the ground that the work was being performed in an inaccessible place where there were no other available boarding houses and the boarding houses were not operated for profit. It would seem irresistibly to follow that, since the board and room furnished in this case were of the men's own selection, and there were a number of places from which they might choose, and that the work was not being performed in an inaccessible place, the room and board furnished would not be ''provisions and supplies'' within the meaning of the statute.

The cases of *West v. Detroit Fidelity & Surety Co.,* 118 Neb. 544, 225 N. W. 673, and *Delaware Dredging Co. v. Tucker Stevedoring Co.,* 25 Fed. (2d) 44, are to the same effect. The cases of the *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337, and *Hurley-Mason Co. v. American Bonding Co.,* 79

Wash. 564, 140 Pac. 575, and others that might be cited, would not support a holding that the appellants were entitled to a claim against the contractor's bond for the room and board furnished Gatooty and his associates. Those cases would support the holding in the cases of *National Grocery Co. v. Maryland Casualty Co., supra,* and *Brogan v. National Surety Co., supra,* as pointed out in the excerpt quoted above from the latter case.

The appellants were not entitled to enforce a claim against the bond.

There is the further contention that the trial court erred in refusing to grant a new trial. After the court rendered its memorandum decision, the appellants moved for a new trial upon a number of grounds, and supported the motion by affidavits, which are brought to this court in the clerk's transcript, and not in the statement of facts. It has many times been held that affidavits used upon a hearing in the trial court can only be considered by us when brought here by bill of exceptions or statement of facts. The affidavits being only in the clerk's transcript, we cannot consider them.

The judgment will be affirmed.

All concur.