[No. 27252. Department Two. February 21, 1939.]

E. LOFTHUS, *Respondent*, v. E. O. CUMMING *et al.,*
*Appellants.*[1]

*J. W. Bryan* and *James W. Bryan, Jr.,* for appellants.
*Marion Garland,* for respondent.

GERAGHTY, J.—This appeal is from a judgment of the
superior court establishing and foreclosing a lien
claimed by the plaintiff for materials used in the con-
struction of a residence in the city of Bremerton.

The defendant E. O. Cumming, a housebuilder, de-
sired to erect a residence in an addition to Bremerton
owned by J. W. Bryan, and it was agreed between

[1]Reported in 87 P. (2d) 283.

them that Bryan and his wife should convey a plot of ground to Cumming, for the agreed price of five hundred fifty dollars. No part of the purchase price was paid in cash, but Cumming and wife executed their note, in favor of Bryan, for the purchase price, payable on or before March 1, 1937. This note was not delivered to Bryan, but, with a quitclaim deed executed by the Cummings, reconveying the plot to Bryan, was deposited in escrow with the First Federal Savings and Loan Association of Bremerton for delivery in accordance with instructions embodied in the following agreement executed by the parties on August 11, 1936:

"Attached hereto we hand you the following instruments:

"(a)  Quit-claim deed executed by E. O. Cumming and Ida Mae Cumming, his wife, conveying to J. W. Bryan and Lorena Bryan, his wife, that property known as:

"The West Sixteen (16) feet of Lot Five (5) and the East Thirty (30) feet of Lot Six (6), Block Two (2), J. W. Bryan's First Addition to Bremerton, Washington, Kitsap County, Washington.

"(b)  Promissory note executed August 11th, 1936, by E. O. Cumming and Ida Mae Cumming, his wife, in favor of J. W. Bryan, for $550.00, payable without interest on or before March 1st, 1937, with interest at the rate of 7% per annum after maturity until paid.

"The deed referred to in paragraph (a) above is to be returned to the said E. O. Cumming at such time as the note described in paragraph (b) above has been fully paid. In the event that said note is not paid by its due date, then in that event the said deed is to be released and turned over to J. W. Bryan.

"It is hereby understood and agreed between all parties hereto that the note set forth in paragraph (b) above represents the full purchase price and is given in payment for the West Sixteen (16) feet of Lot Five (5) and the East Thirty (30) feet of Lot Six

(6), Block Two (2), J. W. Bryan's First Addition to Bremerton, Washington, Kitsap County, Washington, which property has been conveyed by the said J. W. Bryan and Lorena Bryan, his wife, to the said E. O. Cumming and Ida Mae Cumming, his wife, and that the purchase price is to include any and all assessments or taxes now levied against said property. In the event that the said E. O. Cumming pays any and/or all of the assessments or taxes due on said property, any amount so paid shall be credited as a payment on said note.

"It is also understood and agreed that any amount due on the note described in paragraph (b) above shall be paid as soon as is practically possible after the sale of the property, regardless of the due date of the note, but said note shall become due and payable at maturity."

Cumming had arranged for a building loan from the savings and loan association, and, after taking title, he and his wife executed a mortgage, in favor of the association, to secure the loan, in the sum of three thousand dollars. The proceeds from this loan were advanced by the association from time to time as the work on the residence progressed. The plaintiff, E. Lofthus, doing business as the Lofthus Lumber Yard, supplied the lumber and mill work required by the builder, and, at or about the time of the commencement of the delivery of materials, gave to the savings and loan association a written waiver of his right to a lien for the materials supplied. This waiver, while referred to, is not found in the record, but is understood to have employed the language embodied in the subsequent waiver.

Later, more money was required to complete the residence, and the loan was increased from three thousand to thirty-seven hundred and fifty dollars, and a second mortgage given. Lofthus again executed a

waiver in favor of the savings and loan association of his right to a lien by the following instrument:

"For and in consideration of ONE DOLLAR AND OTHER VALUABLE CONSIDERATION, to us in hand paid, receipt of which is hereby acknowledged, we hereby waive in favor of FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BREMERTON, any and all rights which we may now have or may hereafter acquire for materials and/or labor furnished to E. O. Cumming and Ida Mae Cumming, husband and wife, for the construction of one certain dwelling situated on: [description] and we hereby declare that certain mortgage executed by E. O. Cumming and Ida Mae Cumming, husband and wife, on November 25th, 1936, in favor of First Federal Savings & Loan Association of Bremerton, to secure the payment of THREE THOUSAND SEVEN HUNDRED FIFTY AND No/100 ($3,750.00) DOLLARS and interest thereon, to be senior and prior to any claim whatsoever that we may have or hereafter acquire."

The residence was so far completed by the latter part of November, 1936, that it was advertised for sale and exhibited to prospective purchasers. The house did not sell, and Cumming and wife moved into it about December 1st. Cumming having defaulted in payment of the note due March 1st, Bryan demanded and received from the savings and loan association the deed held in escrow. He placed the deed of record, and entered into possession of the premises.

March 9, 1937, Lofthus filed a lien against the property for a balance of $831.71, claimed to be due him for materials sold to Cumming and used on the residence. Thereafter, he instituted this action to recover the sum due from Cumming and wife and to foreclose his lien on the premises. J. W. Bryan and wife were joined in the action as defendants.

The complaint alleged that, on or about August 18, 1936, the plaintiff, at the request of E. O. Cumming, commenced to furnish materials for the residence, and

completed delivery on December 14, 1936, and filed his claim of lien March 9, 1937. The relief prayed for was a money judgment for the balance due, with costs, against the defendants Cumming; and that the lien be decreed superior to the rights of the defendants Bryan, and foreclosed. The defendants Cumming made no appearance in the action.

The defendants Bryan, by way of affirmative defense, alleged that their conveyance to Cumming, the escrow agreement, and the mortgage to the savings and loan association, were parts of an agreed plan, in accordance with which the proceeds of the mortgage were to be disbursed by the association in the payment of material and labor bills and other costs of construction; that, upon its completion, the residence was to be offered for sale by Cumming and the association, and the note paid out of the proceeds; and that, in case the house was not sold and the note paid on its due date, the quitclaim deed in escrow would be delivered to the Bryans, thereby confirming their title to the property, subject only to the mortgage. It is alleged that the plaintiff, Lofthus, was a member of the board of directors of the savings and loan association, and was informed of the nature of the transaction.

The answer alleges that the waiver of lien executed by Lofthus was a general waiver of all right of lien upon the property; that the furnishing of materials ceased on or prior to November 25, 1936; and that all deliveries of materials alleged in the complaint to have been made subsequent to that date, were fictitious and did not represent deliveries of materials made for use upon the residence.

After trial to the court, a money judgment was entered in favor of the plaintiff and against the defendants Cumming. The lien of the plaintiff was adjudged to be superior to the rights of the defendants Bryan

in the property, and was ordered foreclosed. The defendants Bryan appealed from the provisions of the judgment establishing and foreclosing the lien.

The first error assigned by the appellants is the failure of the court to hold that the respondent's waiver of lien was general in its application, and was effective not alone in favor of the mortgage lien of the savings and loan association, but was a bar to all right of lien upon the property.

In 18 R. C. L. 963, § 105, the rule is stated to be that, where a release of a mechanic's lien is given to a mortgagee merely for the purpose of giving priority to the mortgage, the effect of the release would be confined to the purpose intended by the parties. *Paulsen v. Manske*, 126 Ill. 72, 18 N. E. 275, 9 Am. St. 532, is cited and supports the text.

Referring to the waiver executed by the respondent, we note that it is made in favor of the First Federal Savings and Loan Association of Bremerton, and its purpose declared to be that the association's mortgage should be senior and prior to any claim that the respondent then had or might thereafter acquire. The language employed can leave no doubt that the waiver was limited in its operation to the association's mortgage.

It is next contended by the appellants that the escrowed quitclaim deed was intended as a mortgage; and that, while not recorded, its existence was known to the respondent when he furnished the materials to Cumming, the record owner.

It is unnecessary to express any opinion on the question whether the escrowed deed was, in effect, a mortgage securing the purchase price, because the court found, as a fact, that the respondent had no knowledge of its existence or of the contents of the escrow agree-

ment in the files of the association of which he was a director.

■ The most difficult problem for solution in the case is the question of fact as to the timeliness of the filing of respondent's claim of lien.

The house was practically finished and ready for occupancy by the latter part of November, 1936, and was advertised for sale and opened to public inspection. Failing to make a sale, defendants Cumming moved into it about the first of December, and continued to reside there until possession was given to the appellants after March 1st. The bill of particulars furnished by the respondent set out a detailed list of the materials delivered on the premises, with the dates on which they were made. The last two deliveries were alleged to have been made by respondent after December 1, 1936: One a small quantity of lumber and some spikes, billed at $1.74, on December 10th; the other, a small sash for use in the basement, billed at $1.53, December 14th. The last delivery, prior to these items, was made November 30th. As the claim of lien was filed March 9th, it is seen that it was not timely filed unless at least one of the deliveries claimed to have been made subsequent to December 1st was proved.

It may fairly be taken for granted from the evidence that the materials claimed to have been delivered on December 10th were not for use on the premises involved here, but upon another job which Cumming had on hand, so that the issue narrows to the delivery of the sash on December 14th.

There is in evidence a receipt for the sash, admittedly signed by Cumming, bearing date December 14th, but with a notation "Will call next week." Above the signature of Cumming is another notation, "Del. Dec. 21." The last notation, as well as Cumming's

signature, was made with a red lead pencil, and the respondent testified that the frame was ordered by Cumming and was delivered two or three days before Cumming's receipt was signed in respondent's office.

"Well, Cummings got the window delivered a couple or three days before he was down there and signed that delivery ticket and I was right in the office at the time he was in there and signed the ticket. Percy Le Fevre mentioned it,—he said, 'Now, I took that sash up to you and here is the ticket, so I want you to sign it,' so Cummings did; he signed it."

The witness Le Fevre, who was in charge of respondent's lumber yard, testified that he delivered the sash himself about the 17th or 18th of December; that he left it on the porch on his way home from work in the evening; that later, Cumming was in the respondent's office, and he (Le Fevre) had him receipt for it by signing the material slip in evidence.

The defendant E. O. Cumming, called as a witness by the respondent, testified that he moved into the house around the first of December; that the sash was delivered after the house was finished, but he did not know whether it was before or after he moved in. It had been delivered there some time during the day, "As I stopped there I picked the window up and took it into the basement." He said the window was hung in place by Mr. Miranda, his son-in-law.

"I just happened to be down at the office and Percy told me that—asked me if I had received that window and I told him I found it up there and he wanted to know if I would sign a slip for it, to show that it had been received,—they didn't have any signature on it."

Dominic L. Miranda, son-in-law of the defendants Cumming, testified that the Cummings moved into the house two or three days before December 1st. He and his wife stayed with them at the time. He stated

that right after they moved into the house he installed the sash, on the first of December.

Mrs. E. O. Cumming testified that she and her husband moved into the house on the 27th of November; that no delivery of materials was made after the family moved in; that the garage window in the basement was open, and she requested her son-in-law to install the sash, which was then in the basement; and that the sash was installed on the first of December.

On this conflicting testimony, the court found that the furnishing of materials was completed December 14, 1936. While the record discloses circumstances tending to support appellants' contention that delivery was made prior to December 1st, the issue was dependent largely upon the credibility of the witnesses whose testimony was heard by the trial court, and we must of necessity give weight to its findings. It cannot be said that the evidence preponderates against them.

The appellants assign error upon the court's denial of their motions to reopen the case for further evidence or, in the alternative, for new trial. The motions were supported by affidavits. While certified copies are transmitted by the clerk, the affidavits are not made part of the statement of facts or settled and certified by the trial judge. They cannot, therefore, be considered on appeal. *Swenland v. Gregory,* 118 Wash. 640, 204 Pac. 597; *Rogers v. Rowland,* 168 Wash. 148, 10 P. (2d) 988; *Alexiou v. Nockas,* 175 Wash. 142, 26 P. (2d) 619.

The judgment is affirmed.

STEINERT, BEALS, MILLARD, and SIMPSON, JJ., concur.