Goldberger-Raabin, Inc., Plaintiff, *v.* 74 Second Avenue Corporation, Respondent, and Jacob S. Harman, Appellant, Impleaded with Others.

(Argued November 25, 1929; decided December 6, 1929.)

*Harold R. Medina* and *William Gilbert* for appellant. The notice of lien complies in all respects with section 9 of the Lien Law. (*Pascual* v. *Greenleaf Park Land Co.*, 245 N. Y. 294.) The plaintiff's notice of lien contains a statement of the amount unpaid for services rendered to the date of its filing and also complies with the requirement of the statute that the agreed price and value of such services shall be stated. (*Barrett* v. *Schaefer, Jr., & Co.*, 162 App. Div. 52.) The services rendered by the plaintiff clearly entitled him to the protection afforded by the Lien Law. (*Thompson-Starrett Co.* v. *Brooklyn Heights Realty Co.*, 111 App. Div. 358; *Spannhake, Inc.*, v. *Mountain Const. Co.*, 159 App. Div. 727; *Stryker* v. *Cassidy*,

76 N. Y. 50; *Swasey* v. *Granite Spring Water Co.*, 158
App. Div. 549; *Rinn* v. *Electric Power Co.*, 3 App. Div.
305; *Chase* v. *James*, 10 Hun, 506; *Post & McCord* v. *City* ·
*of New York*, 86 Misc. Rep. 300.)

*Frederick Zorn* and *Joseph Kahn* for respondent. The
notice of lien is fatally defective because it states the
nature of labor performed and to be performed and a lump
sum for agreed price and value thereof and a lump sum
for the amount unpaid. This is insufficient as failing to set
forth the agreed price or value of labor performed at the
time of filing the notice of lien. (*Bossert* v. *Fox*, 89 App.
Div. 7; 180 N. Y. 546; *Finn* v. *Smith*, 186 N. Y. 465;
*Bachmann* v. *Spinghel*, 164 App. Div. 725; *Pascual* v.
*Greenleaf Park Land Co.*, 245 N. Y. 294; *Storch & Co.* v.
*Marginal Realty Corp.*, 109 Misc. Rep. 669; *Gately* v.
*Gately*, 103 Misc. Rep. 16; *Copp* v. *Firemi*, 182 App. Div. ·
289; *Higgins* v. *Piel Co.*, 208 App. Div. 729; *Mahley* v.
*German Bank*, 174 N. Y. 499; *McDermott* v. *Lawyers
Mortgage Co.*, 232 N. Y. 336.) The statute does not give
a lien for services in connection with making contracts,
obtaining insurance or conferring with architect, owner or
engineer. (*Bennett* v. *Gerry Co.*, 273 Penn. St. 585; *Hilton Bridge Const. Co.* v. *New York Central R. R. Co.*, 145
N. Y. 390; *Holzhauer* v. *Meer*, 59 Mo. 434; *Bruns* v.
*Braun*, 35 Mo. App. 337; *Sound Transfer Co.* v. *Phinney
Realty & Investment Co.*, 71 Wash. 473.) Appellant has
in effect obtained damages for breach of a contract of
employment. A lien cannot be awarded for such damages. (*Whritenour, Inc.*, v. *Colonial Homes Co., Inc.*, 209
App. Div. 676; *Higgins* v. *Piel Co.*, 208 App. Div. 729;
*O'Reilly* v. *Mahoney*, 123 App. Div. 275.)

CRANE, J. The 74 Second Avenue Corporation
commenced the erection of an office building known as
97–101 Walker street, in the borough of Manhattan, city
of New York, and employed Jacob S. Harman as superintending engineer in charge of construction. Work com-

menced August 15, 1926, and ended April 25, 1927, before completion through the owner's financial inability to complete. Harman filed a mechanic's lien which he has sought to foreclose in this action. The Special Term upheld the lien, awarding him judgment for $4,500. The Appellate Division has reversed the Special Term judgment, holding the notice of lien defective and insufficient under the statute.

Before examining the notice of lien we had better understand the nature and extent of Harman's claim.

The contract between the parties was made orally in August of 1926 and later reduced to writing October 1st of the same year. There is no dispute over the terms of the contract. After the recitals it is agreed:

" *First.* The Corporation hereby hires Harman, and Harman hereby agrees to be employed by the Corporation as general superintendent of the Corporation with relation only to the construction of a modern office building on premises 97–101 Walker Street, Borough of Manhattan, City of New York.

" *Second.* That the duties of said Harman shall be only that of generally superintending the job, procuring bids from sub-contractors for the different items of work necessary to be performed; the co-ordinating of the work of the sub-contractors; and to co-operate with the engineer and architect, subject, however, at all times to the orders, directions and instructions of the Corporation.

\*     \*     \*     \*     \*     \*     \*

"*Fourth.* That for his services as aforesaid the Corporation shall pay to Harman a sum equal to two and one-half per cent. ($2\frac{1}{2}\%$) of the total net cost of construction. The total net cost of the construction shall be deemed to include net cost of material and labor, but shall not include the cost of the land, insurance, plans, nor the salaries and fees paid to those who act in a superintending, executive or advisory capacity with relation to the construction of said building.

"*Fifth.* The Corporation shall pay to Harman the sum of One Hundred Dollars ($100.00) at the end of each and every business week during the course of his employment, which payment shall be on account of the commissions or compensation earned or to be earned by Harman. If the compensation earned by Harman is less than the aggregate of the sums paid in weekly installments as herein provided for, the said Harman shall reimburse the Corporation to the extent of the surplus received by him."

As this contract was broken in April of 1927 by the 74 Second Avenue Corporation, Harman has an action against it for damages in which he may recover the profits he would have made if the contract had been fully completed. He cannot recover such damages through a mechanic's lien. (*O'Reilly* v. *Mahoney*, 123 App. Div. 275; *Whritenour Co., Inc.,* v. *Colonial Homes Co., Inc.,* 209 App. Div. 676.)

The Lien Law [Cons. Laws, ch. 33], section 3, gives to a contractor who performs labor for the improvement of real property a lien for the value or agreed price of such labor upon the real property improved. Section 2 defines improvement: " The term ' improvement ' when used in this chapter, includes the erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property or materials furnished for its permanent improvement * * * and shall also include the drawing by an architect or engineer, of any plans or specifications which are used in connection with such improvement." Harman was to have two and one-half per cent upon the total net cost of construction for doing some things for which he could not file a lien, standing alone and by themselves. The record shows that there was a building upon this property which had to be torn down before the new building could be erected. We are not told the nature of this building or how extensive was the work of demolition.

All we have is the statement that a building was torn down. Neither does Harman testify as to his connection with this work of destruction. Where the removal or tearing down of a building does not amount to an improvement of the real property it has been held that no mechanic's lien can be filed for the value of such work. (*Thompson-Starrett Co.* v. *Brooklyn Heights Realty Co.*, 111 App. Div. 358.)

Harman did not prepare the plans and specifications. He says, however, that he supervised and prepared the contracts for the subcontractors. For this work there can be no mechanic's lien. Section 2, as above quoted, gives a lien to an architect or engineer for drawing plans and specifications which are used in connection with such improvement. Ordinarily such work would probably include the contracts prepared by the architect or engineer but where an architect has prepared the plans and specifications our Mechanics' Lien Law does not provide that an engineer may have a lien for merely preparing and obtaining subcontracts based upon these plans and specifications. The case of *Bennett* v. *Gerry Co.* (273 Penn. St. 585), under an act giving an architect no lien for his services, held that the work of securing contracts from subcontractors was no part of the work of superintendence.

The tearing down or destruction of the building may have been an improvement to the real property or part of the necessary improvement according to the circumstances to be determined as a question of fact. If such work was an improvement or necessary part of work done upon such property for its permanent improvement I see no reason why the labor and service in connection with such work should not be covered by the Lien Law.

We come then to the claim of Harman, the engineer, under the contract and under the Lien Law. For what services can he have a lien and what will be the measure of his compensation?

Harman is entitled to a lien for the reasonable value

of his services as superintending engineer up to the time of his filing the lien in April, 1927. This includes the reasonable value of his services in superintending the construction of the new building and the tearing down of the old building, providing the old building was torn down as part of the work necessary for construction and for the improvement of the real property. This, of course, will be determined upon a new trial. He is not entitled to a lien for his services in aiding or assisting in procuring subcontracts or subcontractors. While this was part of his contract, it is not part of the work of improving property for which the law provides a lien.

The record in this case is barren of any evidence of the value of these services. The estimated value given by Harman includes services which are here eliminated and is also figured in an improper way. The claimant estimated value as he would for damages upon breach of contract. He is confined in this action to the reasonable value of his services rendered by him for which the law provides that he may file a lien. These, to repeat, are confined to his service in superintending construction including service in superintending the demolition of the old building, providing that was a necessary part of the work of improving the real property.

The next question is whether the lien as filed by Harman complies with the law. Section 9 says that the notice of lien shall state, among other things, the labor performed and the agreed price. or value thereof, and the amount unpaid for such labor. This does not mean that the lien is void if the amounts stated are inaccurate; it means that the lien shall state the claim of the lienor which, upon the trial, may appear to be much less than the amount stated. If the claimant has stated the labor performed and the agreed price or value thereof, the lien is good for the amount of labor he proves that he has performed and for the value which the court determines that labor has, even though it be different from that stated in the claim

The notice in this case complies with this law, although stating the figures inaccurately. The agreed price is stated according to the contract two and one-half per cent of construction cost, or $7,750. This is the contract price as figured by the claimant. It also states that by the contract he is to have $100 per week. The labor performed is also accurately stated; it is supervision and superintendence of the construction of the building erected at the place stated, 97–101 Walker street. The lien also states that this work of superintendence commenced August 15th, 1926, and that the last day of performance was April 25th, 1927, a period of thirty-six weeks. We, therefore, have this notice of lien stating on its face that the labor performed by Harman was the supervision and superintendence of the contract for construction and the work thereunder on the building specified; that this work lasted for thirty-six weeks and that the contract price was to be $100 a week. This would make $3,600, the amount due for the work performed. He also states in the lien that $1,100 had been paid on account, which leaves $2,500 due, which he expresses in this way: "The amount unpaid to the laborer for such labor is $2,500, due on drawing account." He also claims that there is to be added to this an amount due on the percentage balance, two and one-half percentum (2½%) of construction cost, claiming the balance according to contract price instead of the reasonable value of the services performed. The Lien Law permits the amount due to be stated according to contract price or according to the value of the work performed. The labor performed, however, must be figured and determined according to the reasonable value thereof as the contract was not completed and the percentage includes pay for services for which a lien may not be filed.

This notice of lien, therefore, complies with the requirements of section 9 as fully and completely as can be done considering the nature of the contract, the class of labor

and the breach or termination of the contract before completion.

*Pascual* v. *Greenleaf Park Land Co.* (245 N. Y. 294) is unlike this case. There the notice of lien failed to state the value of the work performed or the amount due for such work. The figures given may have included work yet to be performed. " The amount unpaid to the lienor for *such* labor and material is Four Thousand eight hundred and ten dollars." " Such labor " referred to the previous statements in the notice which included work performed and to be performed. We said that the part referring to work to be performed could not be rejected " if the notice fails elsewhere to state, by implication, at least, the agreed price or value of the labor performed and materials furnished, exclusive of labor to be performed or materials to be furnished in the future." The lien here states the labor performed for thirty-six weeks, the agreed price and the balance due therefor; plus work at the agreed percentage meaning two and one-half per cent on the net cost to April 25th, 1927. The reference, therefore, in this notice to work to be performed may be disregarded.

We, therefore, conclude that there must be a new trial in this case, that the notice of lien is valid and that upon the new trial Harman will be entitled to a judgment for the reasonable value of the labor of superintendence performed by him as that has been limited by us, less the amount already paid him.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, costs to abide the event.

POUND, KELLOGG, O'BRIEN and HUBBS, JJ., concur; CARDOZO, Ch. J., and LEHMAN, J., not sitting.

Judgments reversed, etc.