## (April 30, 1970)

■ L. B. FOSTER COMPANY, Plaintiff, v. TERRY CONTRACTING, INC., et al., Defendants, and TUFANO CONTRACTING CORPORATION, Respondent. MELBROS-MANCO, INC., Third-Party Plaintiff-Respondent, v. TERRY CONTRACTING, INC., et al., Third-Party Defendants-Appellants. TERRY CONTRACTING, INC., Appellant, v. MELBROS-MANCO, INC., Respondent, and MASSACHUSETTS BONDING & INSURANCE COMPANY et al., Impleaded Respondents.

APPEAL from a judgment of the Supreme Court in favor of Melbros-Manco, Inc. and Tufano Contracting Corporation entered February 7, 1969 in New York County upon a decision of the court at a Trial Term without a jury.

MEMORANDUM BY THE COURT. Judgment, after a nonjury trial, entered February 7, 1969, affirmed, with $50 costs and disbursements. The defendants Melbros-Manco, Inc., and Tufano Contracting Corporation are both subcontractors. The main action was brought by L. B. Foster Company, a subcontractor, against the State of New York and other lienors joined as defendants, to foreclose a mechanic's lien on moneys earned and to be earned under a contract between Terry Contracting, Inc., and the State of New York for the construction of a portion of the Prospect Expressway, Brooklyn, N. Y., on the payment and materials bond.

The evidence of breach of contract by Terry Contracting, Inc., is accepted, not in support of any claim for damages, but in support of Melbros' right to

disregard the contract price and to press its claim in *quantum meruit*. Melbros was entitled to so do and obtain a valid mechanic's lien for the fair and reasonable value of the work actually performed. (*Wright* v. *Reusens*, 133 N. Y. 298; *Hunter* v. *Walter*, 12 N. Y. S. 60; *Day* v. *Eisele*, 76 App. Div. 304; 51 ALR 2d 1009.)

In the instant case the work was done and led to the ultimate improvement of the property. And as then Judge CRANE said in *Goldberger-Raabin* v. *74 Second Ave. Corp.* (252 N. Y. 336, 341) "If such work was an improvement or *necessary part of work done upon such property for its permanent improvement* I see no reason why the labor and service in connection with such work should not be covered by the Lien Law." (Emphasis added.)

Further, while the *improvement* of real property is the basis of any lien, in the case of the construction of a *public* improvement, and such is the case in suit, the statute grounds the lien upon the furnishing of materials to, or the performance of labor for, a contractor (Lien Law, § 5). The lien does not attach to the real property itself; it is solely upon money. (See *Anderson* v. *Hayes Constr. Co.*, 243 N. Y. 140, 150.)

Construing the statute liberally, and giving to the words "improvement of real property" a broad and comprehensive meaning (Lien Law, § 23; *Wahle-Phillips Co.* v. *Fitzgerald*, 225 N. Y. 137, 140–141; *Keck* v. *Charles B. Saxon, Inc.*, 164 Misc. 17, affd. 254 App. Div. 731), the trial court properly found that the extra work, labor and materials necessitated by Terry's abandonment of the contract constituted an improvement of the State highway and were lienable (Lien Law, § 45). If an improvement includes "reasonable rental value for the period of actual use of machinery, tools and equipment" and "the value of materials actually manufactured for but not delivered to the real property", as also "any work done upon ° ° ° property or materials furnished *for its improvement*" (Lien Law, § 2, subd. 4) (emphasis supplied), the reasonable value of laborers "kept on hand", together with materials and equipment, would also be an improvement.

And taking a realistic look at the record before us, the figures in suit are not seriously challenged; they are sufficient to countenance the judgment; and on the record and pleadings, after a protracted trial, long after the events, the judgment should be sustained.

As for the minority view, we find no support in the cases for the contention that any portion of the Melbros claim was not lienable. Nor is any such contention raised by any of the very knowledgeable counsel for parties to this litigation. *Goldberger-Raabin* v. *74 Second Ave. Corp.* (*supra*) also cited in the minority opinion, is not a holding supporting the proposition that any portion of the Melbros claim is not lienable; that case deals with personal services, and only that portion of such services as was directed to aiding or assisting the *procurement* of subcontracts or subcontractors was excluded from the lien claim; also excluded were *lost profits,* arising from failure of an owner to complete the construction of a building, partially begun, because of financial inability. The lost profits in that case (p. 340) were "the profits he would have made if the contract had been fully completed" pursuant to a percentage commission arrangement based upon the contemplated total construction cost of the building, the termination of the construction of which constituted the broken contract.

We also except to the statement of the dissent that "Any excess cost to which the lienor may have been put represents not value but damages to the lienor resulting from the breach". The distinction is not meaningful since we do not here deal with an anticipatory breach prior to any performance under a contract or damages arising from lost profits incident to failure of *completion*

of a building commenced. The theory of the minority seems to be that where the services are greater in value than the benefit received, then there can be no lien; with this singular theory, not articulated to any point of ready discernibleness, we are unable to agree. And we note it was not developed by the appellants at the trial or on the appeal, nor did it ever figure before in this almost ancient litigation. Thus, we affirm in all respects.

STEUER, J. (dissenting). This action was originally instituted by L. B. Foster Company, a subcontractor, to foreclose a mechanic's lien on the moneys earned or to be earned by Terry Contracting Co. (Terry), the main contractor for the construction of the Prospect Expressway in Brooklyn. All subcontractors filing similar liens were joined as defendants. All of these claims have been disposed of except those of Tufano Contracting Corporation (Tufano) and Melbros-Manco, Inc. (Melbros). This appeal is by Terry and Ætna Casualty and Surety Company, which company bonded the liens pursuant to section 137 of the State Finance Law. Trial Term found in favor of the two lienors.

As regards the Tufano claim, we are in accord with the disposition reached by the trial court.

The Melbros claim raises certain questions.

The claim as pleaded consisted of five items:

| | |
|---|---:|
| Work done and materials supplied under the contract | $253,480.78 |
| Three claims for "extras" | 55,177.22 |
| "Extra work" | 130,803.82 |
| **Total** | **$439,461.82** |

Against this, progress payments of $205,684.01 were conceded as was a counterclaim of $16,610.11. The claim was therefore $217,167.70. As to the "extras", that is, work not contemplated by the contract but performed according to agreements made in the course of the work, there was no dispute between the parties. Omitting the extras, plaintiff's proof was divided between work done before and after a certain date, roughly 1960. The work done before was charged at the unit prices in the contract. The work done thereafter was charged at reasonable value. The basis for the latter was that Terry breached its contract in that it improperly supervised the general work, putting Melbros to substantial additional expense in that work was delayed and crews were forced to be kept on hand when no work or an inadequate amount was available. When those breaches reached a substantial proportion, the court allowed a charge at the cost to Melbros rather than the unit prices or the reasonable value of the work.

Melbros proved that Terry repeatedly breached the contract in not preparing various sites of work or making them available to Melbros. Melbros was so hampered and delayed that it cost it far in excess of the unit prices to do the work involved. Melbros was required to keep full crews on the job for long periods during which, because of Terry's default, there was insufficient work for them to do. Consequently the cost of the labor to Melbros was grossly in excess of what it would have been had Terry performed. It is this excess that comprises the extra work item in the complaint alleged to be $130,803.82. The primary question is whether this is a lienable item.

The Lien Law speaks alternately of the agreed price and reasonable value of labor and materials supplied (Lien Law, §§ 3, 9, subd. 4). It is not relevant to the questions involved to determine at this point which situations allow recovery of the contract price and which of reasonable value. Obviously where

a contract has been breached the owner cannot rely on it as limiting the choice of the lienor (*Wright* v. *Reusens,* 133 N. Y. 298). But that hardly disposes of the question. Reasonable value in a lien on real property means the value to which the property was improved by the work done by the lienor (*Goldberger-Raabin* v. *74 Second Ave. Corp.,* 252 N. Y. 336, 340).* This in turn is measured by the reasonable value of doing that work. Here, there is no dispute but that the contract unit prices represented the fair value of the work; that is, that the contract price for a foot of excavation was the reasonable value. Any excess cost to which the lienor may have been put represents not value but damages to the lienor resulting from the breach. To put it in the usual contract phraseology, what Melbros is seeking to lien is damages for delay. While Melbros would unquestionably be entitled to recover this sum from Terry in an action on the contract, it remains to be seen whether it can do so in an action to foreclose the lien. Nor is this "extra work". Extra work is work not contemplated in the original contract. This work was embraced in that contract. It was made more expensive because of defendant's breach.

It is quite clear that ordinarily damages for breach of the contract are not lienable. For instance, if the lienor is forced off the job he cannot file a lien for the profit he would have made had he been allowed to complete the contract (Lien Law, § 4; 37 N. Y. Jur., Mechanic's Liens, § 134; *Goldberger-Raabin* v. *74 Second Ave. Corp., supra*). Damages for other types of breach are likewise not recoverable in the action to foreclose the lien (see Blanc, Mechanics' Liens, New York, § 14b and cases cited p. 89).

It may appear that a denial of recovery to Melbros for what it plainly is entitled to recover in another form of action represents an outmoded concept of procedure. Especially in view of section 45 of the Lien Law allowing the court to do equity as between lienors, it could be argued that recovery should be allowed to stand but the in rem aspect of this statutory action be not applied. To reduce this to the specific case, so much of the judgment as reflects damages for breach of contract should remain as a judgment against Terry, with the proviso that it could not be executed from the fund on which the lien was filed. In some cases this might be a pragmatic solution to the awkward situation presented here, but it would be worthless in this instance. Concededly Terry is hopelessly bankrupt. Anything realized would have to be from the fund liened or, more specifically, from the bond given to discharge the lien. The possible solution would therefore be nugatory.

It remains to be seen whether under the proof there was any lienable work done which was not paid for. Taking first the three items of "extras", these were virtually undisputed. The difference between the amount originally claimed and that found by Trial Term represents an additional item; so for these Melbros would be entitled to $69,671.99. Omitting this, Melbros' claim as set out in the complaint was for $253,480.78, according to unit prices, and $130,803.82 for the additional cost due to Terry's breach. Unfortunately, the findings submitted and adopted by the court do not follow this pattern. There the value of the work is divided between the period before Terry breached and that after the breach. The figure before the breach was $118,731.67, and after, $252,533.56. The latter figure obviously includes both the unit prices and the extra expense due to the breach. When the totals are considered, the finding reveals that the proof fell short of the total claim by $13,019.37. There is

* From time to time the Legislature has broadened the concept of what services constitute an improvement, but the principle remains unchanged (Blanc, Mechanics' Liens, New York, p. 86 *et seq.*).

reason to believe that all of this sum represents a difference between the estimated and proved cost of the extra expense.

It therefore follows that Melbros had a lienable claim made up as follows:

| | |
|---|---|
| Work done at unit prices | $253,480.78 |
| Extra work not embraced in the contract | 69,671.99 |
| **Total** | **$323,152.77** |

Against this sum Melbros was paid $205,684.01, leaving a balance of lienable claim of $117,468.76, from which the conceded counterclaim of $16,610.11 should be deducted, leaving a net amount of $100,858.65.

What the majority opinion fails to take into account is that this is a statutory in rem proceeding, with the advantages and the limitations that are inherent in such a proceeding. In this case the advantage is substantial and patent. Without it plaintiff would be relegated to a claim against a hopeless bankrupt, with all the uncertainties of any recovery that such a situation involves. The limitation is that recovery is restricted to what is lienable as distinct from what is actionable. The majority opinion seeks to bring the item by analogy within the items mentioned in subdivision 4 of section 2 of the Lien Law which defines what constitutes an improvement. The statute includes such items as the cost of plans and drawings, of transporting materials and the rental of machinery. All of these go into the actual cost of providing the materials themselves. From this it is argued that the cost of standby labor should be included. Possibly it would be if the necessity for standby labor was an incident of the normal progress of the work. Here, where the cost of the standby labor actually exceeded the actual cost of doing that particular work, it cannot be said to be a normal incident but is, as stated, an item of damage for breach due to delay. The majority further takes exception to the cited cases holding that a breach of contract is not lienable because the breach here was of a different character from the ones involved in the decided cases. The difference does not constitute a distinction.

Judgment entered February 7, 1969, should be modified on the facts and the law to reduce the judgment in favor of Melbros-Manco, Inc., to the sum of $100,858.65, with interest thereon at 6% per annum from June 1, 1961; and otherwise affirmed, with costs of this appeal to Tufano Contracting Corporation.

Capozzoli, J. P., McGivern and Tilzer, JJ., concur in memorandum by the court; Steuer, J., dissents in opinion in which McNally, J., concurs.

Judgment, after a nonjury trial, entered February 7, 1969, affirmed, etc.