ST. JOHNS AND HALIFAX RAILROAD COMPANY, APPELLANT, VS. BARTOLA & GENARO, APPELLEES.

1. Under a bill in equity to enforce a lien for work and labor performed on a railroad under the act of 1879, Chapter 3132, Laws of Florida, it is error to render a decree for a larger sum than is alleged in the bill to be due, and specially asked for in the prayer for relief.

2. Where the special relief asked in the prayer of the bill is abandoned, and further or different relief is sought under the general prayer, it must be consistent with the case made in the bill and not in conflict with what is specially prayed.

3. The lien provided by Chapter 3132, Laws of Florida, is for "labor performed," and independent of the statute such lien would not exist and a court of chancery would have no jurisdiction to adjudicate it. The existence and extent of the lien here provided must depend upon the provisions of the statute, and it is error to award under it a sum for unliquidated damages arising from breach of contract.

Appeal from the Circuit Court for Volusia county.

The facts of the case are stated in the opinion.

*Benjamin P. Calhoun, Robt. W. Davis* and *Irving Gillis,* for Appellant.

St. J. & H. R. R. Co. v. Bartola & Genaro.—Opinion of Court.

*John W. Price* for Appellees.

MABRY, J.:

An examination of the bill of complaint filed in this cause shows that appellees claim and sue for seventeen hundred and sixty-nine dollars and fifty-nine cents, due from appellant for work and labor performed in the construction of its railroad. In the prayer of the bill the specific relief asked in reference to compensation, or a money demand, is that appellees have a decree for said sum as balance due for work and labor performed on appellant's road, and that the same be sold to pay the said sum. The bill sets up a contract, and after averring its performance, or an offer to perform, on the part of appellees, alleges a violation thereof in several particulars on the part of appellants. The amount of the damages resulting from the alleged breaches of said contract is not mentioned, but after alleging the particulars wherein appellant failed to comply, it is distinctly averred that appellant was due appellees seventeen hundred and sixty-nine dollars and fifty-nine cents for work and labor done on its railroad. It is plain that the amount claimed and demanded in the bill for work and labor was seventeen hundred and sixty-nine dollars and fifty-nine cents. A decree was rendered in the Circuit Court for the sum of two thousand eight hundred and thirty-five dollars and forty-four cents for work and labor performed on appellant's road, besides the additional sum of five-hundred and seventy-five dollars and sixteen cents

damages for violating contract, making a total decree for three thousand four hundred and ten dollars and sixty cents. The sum awarded for work and labor is one thousand and sixty-five dollars and eighty-five cents in excess of the amount claimed in the bill and for which a decree is asked in the prayer. This additional sum is not awarded as interest, but the entire sum of two thousand, eight hundred and thirty-five dollars and forty-four cents is what was found to be due for work and labor performed. The question now arises, did the court commit an error in rendering a decree for the amount stated? After the special prayer asking a decree for the sum of $1,769.59, there is a general prayer that appellees have any and all relief to which they are entitled in and by the case made by their bill. It is contended that under this general prayer the court could render the decree entered in this case. Where the special relief asked in the prayer of the bill is abandoned, and further or different relief is sought under the general prayer, it must be consistent with the case made in the bill, and not in conflict with what is specially prayed. Pensacola & Georgia R. R. Co. vs. Spratt & Callahan, 12 Fla., 26. Appellees allege in their bill that there was due them the sum of seventeen hundred and sixty-nine dollars and fifty-nine cents for work and labor done on appellant's railroad, and the special relief prayed for is, that a decree be rendered for this sum and the road sold to satisfy the same. The amount awarded for work and labor was much larger than that claimed in

the bill.  We think it was error to render a decree for a larger sum than the amount alleged in the bill to be due and specially asked for in the prayer.  It is a general rule in chancery as well as at law that the allegations and the proofs must correspond, and in order to sustain a decree in chancery it must be supported both by the allegations and the proofs.  In Mills v. Heeney, 35 Ill., 173, which was a proceeding in chancery to enforce a mechanic's lien, it was expressly decided that a decree should not be rendered for a larger sum than is claimed in the bill, and interest from date of filing it.  The same point was also decided in Prescott vs. Maxwell, 48 Ill., 82.  *Vide* also Brady vs. Anderson, 24 Ill., 110.  But in addition to the sum of twenty-eight hundred and thirty-five dollars and forty-four cents for work and labor performed on appellant's road, the court decreed the sum of five hundred and seventy-five dollars and sixteen cents as damages for violating contract.  While appellees allege a contract for the performance of work on appellant's railroad, and aver a violation of the same in several particulars on the part of appellant, no amount of damages distinct from the demand for work and labor is mentioned in the bill, nor is any decree asked for such damages in the prayer of the bill.  The only theory upon which the bill filed in this case can be maintained at all is that appellees have a lien for work and labor performed in the construction of appellant's railroad. The lien in such cases is given by the act of 1879, Chapter 3132, laws of Florida.  The first section of

this act provides that "every person who shall perform labor upon, in or for the benefit of any railroad, mill or manufactory in this State, whether in the construction, working or repairing thereof, to whom there shall be anything due for such services, shall have a lien of prior dignity to all others upon such railroad, mill or manufactory, whether operated or owned by an incorporated company or not." The second section provides that "such lien may be enforced by bill in equity, and all or any number of persons holding such lien may be joined as parties complainant." Independent of statutory enactment no such lien as is claimed in this suit would exist, and a court of chancery would have no authority to adjudicate such a demand. Phillips on Mechanics' Liens, sec. 9; Dinkins vs. Bowers, 49 Miss., 219. This lien being a creature of statute, its existence and the extent of it must depend upon the provisions of the statute. Brady vs. Anderson, *supra*. It is plain that the statute above mentioned gives a lien for labor performed upon, in or for the benefit of any railroad, mill or manufactory, whether in the construction, working or repair thereof. Everything for which a lien can be claimed under this statute must be embraced within the meaning of the terms, "labor performed upon, in or for the benefit" of the road. The decree before us awards a sum for work and labor performed on the road in question, and a further sum as damages for violation of contract. We do not think the statute provides a lien for unliquidated dam-

ages arising from breach of contract.    Miner vs. Hoyt, 4 Hill, 193; Hoyt vs. Miner, 7 Hill, 525.

The testimony in the record before us is very voluminous, and we will not undertake to discuss all of it. In fact it is not our purpose to express any opinion as to its effects on the question of the demand for work and labor performed; but a reference to a portion of it bearing on the question of damages for violating the contract will show the application of the principle to the facts of this case. The contract alléged in the bill is that appellees were to furnish two hundred Italian laborers for five months to do grade work on appellant's railroad, the right of way over which was to be cleared, and said laborers were to have continuous work for five months and to be paid therefor as the work progressed upon the completion or ten stations, at the rate of thirteen cents per cubic yard for dry dirt, and sixteen cents per cubic yard for wet dirt. It is admitted in the answer that there was an agreement for appellees to furnish two hundred laborers to work on said railroad at the price, and payable as alleged in the bill, but the special contract to furnish work for said laborers, or any number of laborers that appellees might furnish, for five months, is expressly denied. The testimony shows that one of the appellees, Orlando Bartola, visited the railroad and saw it before the work of grading by appellees was commenced, and that he remained with the laborers on the work up to the time that they abandoned it, which was about two months after the beginning of

the work. Bartola was introduced as a witness for appellees, and after producing certain correspondence by letters and telegrams which he claimed led up to and constituted the contract, testified that upon his arrival on the ground where the work was to be done, the president of the said road confirmed the contract. He was the only witness for appellees who testified as to the contract. On cross-examination, he was asked to state fully wherein appellant failed to comply with the contract, as he claimed it to exist. His answer was, "first, in never having sufficient work for the number of men contracted for; second, for charging for tools—there being nothing in said contract to justify said charges; thirdly, contrary to all usages of all railways, proceeding to classify, I not being present, thereby wronging me in heavy sums by not making the payments according to the contract; lastly, by arbitrarily foisting on me an incorrect bill, in the compilation of which I had no voice whatever, and further, their president giving me a check to be dishonored by their treasurer." He was further asked if that was all by which he claimed that the defendant below had forfeited its contract with appellees and in reply said, "yes, for by these acts he made it impossible for me to carry it out, that is, carry on the work any longer." There was testimony in rebuttal as to these matters on the part of appellant, but we do not express any opinion as to the preponderance of evidence on them. Conceding, however, that the court was justified in taking a favorable view of appel-

lees' testimony, we do not think they have any lien under the statute for unliquidated damages arising from the breach of the alleged contract as shown in this case. As before stated, the lien is given for labor performed, and if appellees with full knowledge of the extent and nature of the work to be done, performed work for a while and then abandoned the enterprise for the causes stated by the witness, he can recover in this proceeding for the work done, but cannot ask for unliquidated damages. Canal Company vs. Gordon, 6 Wallace, 561. In a suit in equity they may show if they can, that classifications made, and bill rendered by appellant, are incorrect and do not represent the actual amount due, and in passing upon such matters the court would be arriving at the actual amount due for labor performed. In this case we think the court erred in going beyond work and labor performed, and rendering a decree for damages for violating contract.

For the errors pointed out the decree is reversed, and the cause remanded with directions that such further proceedings be had herein as may be consistent with equity.