KAMPESKA MATERIALS CO., Respondent, v. BONE et al, Appellants.

(219 N. W. 244.)

(File No. 5787. Opinion filed May 4, 1928.)

*McFarland & Kremer,* of Watertown, for Appellants.
*Case & Case,* of Watertown, for Respondent.

BROWN, J. Defendants H. L. Bone & Son had a contract with the state of South Dakota to gravel a portion of highway No. 42 in Brown county. They made a subcontract with H. E. Millen whereby he agreed to do the graveling for 20 cents a cubic yard. Millen, not having the necessary machinery for performance of the work, entered into a contract with plaintiff whereby plaintiff agreed to place loading machinery in a gravel pit near Gage, S. D., and to load on railroad cars 40,000 cubic yards of gravel, the cars to be provided by Millen, but "spotted" or placed at convenient situations for loading by plaintiff. This contract provided that Millen should make arrangements to insure sufficient cars to enable plaintiff to load 40,000 cubic yards in 60 working days, or at a minimum daily rate of 666 cubic yards, and plaintiff was to be paid therefor 18 cents a yard for all gravel loaded, with a minimum average of 666 cubic yards during 60 working days, and 16 cents a yard for all quantities in excess of 40,000 cubic yards supplied within the 60 working days.

Bone & Son were not parties to this contract, but a copy of it was furnished to them.

The defendant Southern Surety Company executed what is known as a "contract bond" to the state whereby it undertook that H. L. Bone & Son should faithfully comply with all of the terms of the contract made by them with the state of South Dakota, and should "pay or cause to be paid the wages stipulated and agreed to be paid to each and every laborer employed by said principal or his agent, and all claims for material furnished."

Millen says that in making his contract with plaintiff he was simply acting as a middleman and making that contract for the benefit of Bone & Son.

Plaintiff furnished 22,840.5 yards of gravel, and alleges that

it was ready and willing at all times to load the entire minimum of 666 yards a day for 60 days, or 39,960 yards in all, amounting at 18 cents a yard to $7,192.80, and this is the basis of plaintiff's first cause of action.

After the work had been in progress for some time, the highway commission found that gravel could be procured from a place much nearer the project than the Gage pit, and it was agreed between Bone & Son and the highway commission that the remaining gravel needed should be procured from this other place. The change effected a large saving to the state in freight charges, and Bone & Son were paid in the neighborhood of $8,000 extra on their contract to cover any loss that might be incurred by them in consequence of not taking any further gravel from the pit at Gage.

About this time D. C. Noonan, president of plaintiff corporation, had a conversation with H. L. Bone, during which Bone asked what he would take to cancel the Millen contract and discontinue loading gravel at Gage. Noonan made out an estimate on paper, and gave a copy to Bone, the items of which aggregated $6,436, and told him that he would cancel the contract on payment of that amount at any time up to and including September 26th, and that after that there would be additional expense of $120 per day. After receiving these figures Bone said to Noonan that he might keep on loading as he had been doing, which he did until October 16th, when Bone notified plaintiff's foreman to furnish no more gravel.

For a second cause of action plaintiff alleges that, at request of Bone, plaintiff removed oversized gravel at the screen to a place some 600 feet distant, and dumped it there, and that the reasonable value of this work was $746.81. For a third cause of action plaintiff alleges that Bone desired plaintiff to load not less than 1,000 yards a day during a part of the time, and in order to do this it had to use a tractor to spot cars instead of the equipment it had, and the net extra expense incurred by using the tractor was $853.30.

The trial court found that Millen, in making his contract with plaintiff, acted for and in behalf of Bone & Son, and as the clear preponderance of evidence is not against this finding, it must be sustained. On plaintiff's first cause of action the court gave

562

judgment for the full amount claimed against Bone & Son, H. E. Millen, and the Surety Company.

The court also found for the full amount demanded on plaintiff's second cause of action for the removing of oversize, and the evidence sustains this finding, as against Bone & Son. Judgment was given against both Bone & Son and the Surety Company on this cause of action.

■ Plaintiff's third cause of action is for the use of a tractor to "spot" or place the cars in proper position for loading.

Noonan testifies that it was plaintiff's duty to spot those cars, but says that Bone wanted not less than a thousand yards a day loaded, that plaintiff had been using a hoisting engine to move the cars, and, in order to expedite the spotting or handling of the cars, plaintiff made a deal with the county for the use of a tractor owned by the county, and used for moving cars. He says that Bone preferred to have this done, but there is no evidence that Bone agreed to pay anything for the use of the tractor. Plaintiff's contract with Millen does not fix any maximum amount that was to be loaded in a day, and, as it was plaintiff's duty under its contract with Millen to do the moving of the cars for which it used the tractor, we cannot see how Bone & Son should be required to pay plaintiff for doing the work which it had agreed to do and which was compensated for by its price of 18 cents a yard for the gravel loaded. Plaintiff made an agreement with the county whereby, for the use of the tractor, it agreed to load some gravel onto county trucks without making any charge to the county, and after allowing certain credits to the county, plaintiff claims a balance of $853.30 as due for the use of the county's tractor, and for this sum the court likewise gave judgment against H. L. Bone & Son and the Surety Company in favor of the plaintiff on its third cause of action.

We do not think judgment against any defendant upon the third cause of action can be sustained.

There is evidence to sustain the full amount of the judgment on the first cause of action as against H. L. Bone & Son, and H. E. Millen does not appeal.

■ But the Surety Company did not undertake to pay any damage that a subcontractor or materialman might sustain by rea-

son of Bone & Son failing to take all the material they had contracted to take.

The Surety Company's undertaking in this respect was that Bone & Son would pay "all claims for materials furnished."

The only material furnished by plaintiff was 22,840.5 yards of gravel which at 18 cents a yard amounted to $4,568.10. On this a payment of $1,155.14 was made, leaving a balance of $3,412.96.

■ The moving of the oversize was not within the terms of the bond. No labor was employed by Bone & Son, nor their agent, to do this work. Plaintiff was not an agent of Bone & Son, but a contractor with Bone & Son in removing the oversize. Plaintiff's claim for removing the oversize was not for wages agreed to be paid to laborers employed by Bone & Son or their agent, nor was it for materials furnished.

Judgment on the second cause of action against Bone & Son was proper, but not against the surety.

The judgment of the trial court, so far as it affects appellants, is modified by eliminating therefrom entirely the sum of $954.13 on the third cause of action, and making the judgment against the Surety Company for $3,412.96, with interest from September 22, 1922, and as thus modified is affirmed. The Surety Company will recover its costs on this appeal.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.