W. S. Terry, *Respondent,* v. United States Fidelity
and Guaranty Company, *Appellant.*[1]

*Wright & Wright,* for appellant.

*Cheney & Hutcheson,* for respondent.

Blake, J.—This is an action on a contractor's bond,
executed pursuant to Rem. Rev. Stat., § 1159 [P. C.

[1]Reported in 82 P. (2d) 532.

§ 9724], to secure persons performing labor and furnishing material in connection with the construction of a public highway. From judgment entered on a verdict in favor of plaintiff, defendant appeals.

The bond was executed by appellant as surety for Bjork Bros., Pearson & Strom, co-partners, to whom we shall refer as Bjork, who had a contract from the state for certain tunnel and rock work on state road No. 5, in the vicinity of the Teiton dam. The contractors entered into a contract with respondent for the removal of about 12,000 cubic yards of material between stations 748 and 751+35. The excavation between these stations was through solid rock. Under the contract, the contractors agreed to do all drilling, furnish explosives, and do all blasting, at their own expense, without interfering with respondent in his operations in removing the material. Respondent was to receive thirty-eight cents per cubic yard for material moved. It was agreed "that the quantities involved shall be estimated by the resident engineer in charge."

September 21, 1936, respondent moved a steam shovel onto the job. Before the work contemplated was completed, a controversy arose between the parties, which finally resulted in the contractors ordering respondent off the job early in December, 1936. On December 21st, the resident engineer submitted to the contractors an estimate of the material removed by respondent, fixing the quantity at 8,069 cubic yards. On the basis of this estimate, respondent was entitled, under the contract, to $3,066.22, of which he had theretofore received $1,980.

Respondent brought this suit against the surety company, setting up two causes of action: (1) For recovery of the balance due for material actually removed; (2) for damages, by way of loss of profits, by reason of the fact that he was prevented by the con-

tractors from removing some 4,742 cubic yards additional material contemplated by the contract. The jury returned a verdict on the first cause of action for $748.27, and for $348.33 on the second. Judgment was entered accordingly.

The assignments of error challenge (1) the sufficiency of the evidence to sustain any verdict for plaintiff; (2) the sufficiency of the evidence to sustain the amount of the verdict on the first cause of action; (3) the liability of the bond, in any case, on the second cause of action.

*First:* The challenge to the sufficiency of the evidence is based on the theory that respondent breached the contract. We shall not undertake to review the evidence which appellant adduced, tending to support that theory. We may say, however, that it was sufficient to support a verdict for appellant, had the jury accepted it at face value. On the other hand, we think that respondent's theory that Bjork breached the contract is amply supported by the evidence.

Briefly, from the standpoint of respondent, the evidence shows that respondent started operations September 21, 1936, and continued uninterruptedly until October 23rd; that he then ceased operations, because he had caught up with Bjork's blasting operations and there was no more material to be moved; that he was ready at all times to proceed with the job, if and when Bjork proceeded with the blasting; that he received a written demand from Bjork that he resume operations not later than six p. m., November 14th; that he returned to the job about December 1st, ready and willing to carry on the work under his contract, Bjork having, for reasons unnecessary to state here, waived strict compliance with the demand; that

no blasting had been done since he ceased operations on October 23rd.

It is admitted that no blasting was done by Bjork between October 23rd and December 14th and 15th. In view of the provision in the contract to the effect that Bjork would do the blasting so as not to interfere with the progress of respondent's operations, we think the foregoing evidence was sufficient to make the question of the breach of the contract one for the jury to determine.

■ *Second:* As we have seen, the resident engineer estimated that respondent had moved 8,069 cubic yards of material. He was called as a witness and testified in accordance with his estimate. On cross-examination, certain admissions were elicited from him, which cast doubt on the accuracy of his estimate. It appears that the estimate was not entirely harmonious with monthly estimates he made to the highway department as to the amount of material moved by Bjork between stations 748 and 751+35 before respondent commenced operations. There seems to be no dispute in the evidence that he included in the Terry estimate a thousand cubic yards or more of material which Bjork removed after respondent ceased operations. We think, however, it is apparent from the verdict on the first cause of action that the jury took account of the latter discrepancy.

As to the apparent discrepancy between the estimates made to the highway department on Bjork's account and the estimate made as between Bjork and respondent, the resident engineer testified that, in his monthly estimates to the highway department before respondent commenced operations, he made allowances for greater quantities of material than were actually moved. He and other witnesses testified that this was customary, in dealing with contractors·of unquestioned

responsibility, and was done to assist them in adequately financing and carrying on their work.

Appellant insists that the estimates made to the highway department are official and therefore binding. There is nothing in the contract that makes them so. The provision in the contract, leaving to the resident engineer the determination of the quantity of material moved by respondent, is general in terms. It was not stipulated that his estimate be conclusive. And it was not so treated in the trial of the case. Its accuracy or inaccuracy was clearly a matter to be determined by the jury.

In this connection, appellant complains that the court committed error, in that evidence was admitted of a

". . . custom to the effect that a subcontractor was entitled to be paid for yardage not actually removed by the subcontractor, but removed by the principal contractors before contractual relations ever arose between the parties."

Whatever error was committed in admitting such evidence was not prejudicial. For the court specifically instructed the jury:

"You cannot allow him [respondent] compensation for any yardage which the principal contracting firm removed from the stations upon which the plaintiff worked prior to the time that the plaintiff commenced his operations."

See *McCormick v. Tappendorf,* 51 Wash. 312, 99 Pac. 2.

*Third:* Whether unliquidated damages for breach of contract may be recovered against such a bond as this, is a question of first impression in this state. A number of cases have been cited which are thought to bear one way or the other upon the question. From our reading of the cited cases, it seems to us that only three deal with the subject specifically enough to

require notice. *Burton v. Seifert & Co.*, 108 Va. 338, 61 S. E. 933; *Haakinson & Beaty Co. v. McPherson*, 182 Iowa 476, 166 N. W. 60; *Kampeska Materials Co. v. Bone*, 52 S. D. 559, 219 N. W. 244. In the first case, it is flatly held that such damages may be recovered against the bond. The second case seems to so hold, although it would appear that the bond there sued upon contained broader provisions than required by the statute. In the third case cited, it is flatly held that such damages are not recoverable against a statutory bond of this character.

We feel, however, that, regardless of holdings in other jurisdictions, the question should be determined in the light of our own cases construing bonds executed pursuant to Rem. Rev. Stat., § 1159. Speaking of the purpose of bonds required by that statute, the court, in the case of *American Sav. Bank & Trust Co. v. National Surety Co.*, 104 Wash. 663, 177 Pac. 646, said:

"It should be borne in mind that the legislature had in view here public works and buildings and was providing security and protection only to those who, if the work were private in its nature, would be protected by the lien laws. In other words, the bond given under this statute and in the statutory language becomes a substitute for the right of lien which would exist were the work private. And, therefore, looking to analogous lien cases for a rule as to who may claim under the bond, we find the prevailing doctrine to be that one who loans money is entitled to no lien therefor . . .

"Hence it logically follows that one who loans money to a contractor on public work cannot claim under the statutory bond."

And, in actions upon such bonds, the court has applied that standard of liability. The inquiry has uniformly been directed as to whether the claimant furnished labor, provisions or supplies, for the carrying on of the work. *Kongsbach v. Casey*, 66 Wash. 643,

120 Pac. 108; *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337; *City Retail Lumber Co. v. Title Guaranty & Surety Co.*, 72 Wash. 300, 130 Pac. 345; *State Bank of Seattle v. Ruthe*, 90 Wash. 636, 156 Pac. 540; *Puget Sound Bridge etc. Co. v. Jahn & Bressi*, 148 Wash. 37, 268 Pac. 169; *National Grocery Co. v. Maryland Casualty Co.*, 148 Wash. 387, 269 Pac. 4, 65 A. L. R. 256. In the next to the last case cited, the court said:

"Our rule is that, as against the bondsman of the principal contractor, a subcontractor performing services, or a materialman furnishing materials, can not recover in excess of the reasonable value of the services performed or the reasonable value of the materials furnished."

Now, in the light of this statement and the rule as stated in *American Sav. Bank & Trust Co. v. National Surety Co.*, *supra*, we think it is clear that the bond is not liable for an unliquidated claim for damages against the contractor. For it is the general rule that unliquidated claims for damages against a contractor cannot be established as a lien against the property upon which labor is performed or materials furnished. 40 C. J. 92, § 75; *Priest v. Murphy*, 103 Ark. 464, 144 S. W. 921; *Favalora v. Bourgeois*, 164 La. 521, 114 So. 119; *Goldberger-Raabin, Inc. v. 74 Second Avenue Corp.*, 252 N. Y. 336, 169 N. E. 405; *Dyer v. Wallace*, 264 Pa. 169, 107 Atl. 754; *St. John etc. R. Co. v. Bartola & Genaro*, 28 Fla. 82, 9 So. 853; *Tabor v. Armstrong*, 9 Colo. 285, 12 Pac. 157; *Siebrecht v. Hogan*, 99 Wis. 437, 75 N. W. 71; *Seeman v. Biemann*, 108 Wis. 365, 84 N. W. 490. Hence, as indicated in *American Sav. Bank & Trust Co. v. National Surety Co.*, *supra*, a subcontractor who has an unliquidated claim for damages against the contractor cannot establish the claim against the statutory bond.

The cause is remanded, with directions to modify the judgment accordingly.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.