[No. 466-41380-1. Division One—Panel 2. April 12, 1971.]

REYNOLDS METALS COMPANY, *Appellant,* v. ELECTRIC SMITH CONSTRUCTION & EQUIPMENT CO., *Respondent.*

696

*Studley, Purcell & Spencer, W. R. Studley,* and *Wayne D. Purcell,* for appellant.

*DeGarmo, Leedy, Oles & Morrison, Stuart G. Oles,* and *Bruce T. Rinker,* for respondent.

JAMES, J.—Reynolds Metals Company, a Delaware corporation, planned to expand its aluminum reduction plant located in Longview, Washington. Through its contracting agent, Bechtel Corporation, Reynolds sought bids for the fabrication and assembly of the required bus system. Electric Smith Construction & Equipment Co. was the success-

ful bidder. Under the terms of a "purchase order" which became the written contract, Reynolds was to supply the copper and aluminum components which Electric Smith agreed to fabricate and assemble. Reynolds agreed to pay Electric Smith for its labor and services the sum of $1,399,630.55.

By the terms of the contract, time was of the essence. Electric Smith was to begin to ship complete pot bus assemblies by October 1, 1967, and to reach and thereafter maintain a production rate of 20 assemblies per week by November 1, 1967.

Electric Smith never met the agreed production schedule.

By a letter delivered on January 3, 1968, Electric Smith was notified that pursuant to the general conditions, Reynolds had cancelled the contract because of Electric Smith's failure to meet the required production schedule. Coincident with the delivery of the letter of cancellation, Reynolds replevied the materials it had theretofore delivered to Electric Smith for its labor and services the sum of seeking compensatory damages, asserting that by its unilateral cancellation, Reynolds had breached the contract. Reynolds in turn sought damages alleging that Electric Smith had breached the contract by its failure to meet the contractual production schedule.

The submission of evidence required 27 days of trial. Three hundred eighty-nine exhibits, many of them multiple exhibits, were admitted. The statement of facts contains 3,900 pages.

Reynolds appeals from the judgment which dismissed its complaint with prejudice and awarded Electric Smith $345,828.97 as compensatory damages.

Appropriate assignments of error challenge the trial judge's ultimate finding that Reynolds

totally breached its contract by a wrongful termination on January 3, 1968 for the following reasons:
a. Reynolds Metals Company and Bechtel Corporation

substantially and materially contributed to the causes of Electric Smith failing to meet its production schedule.

Finding of fact 21.

The ways in which Reynolds and Bechtel had "substantially and materially contributed" to Electric Smith's inability to perform are detailed in finding of fact 14. The various failures of performance by Reynolds and Bechtel are characterized in finding of fact 15:

> Some of the delays occasioned by [Reynolds] and its agents as set forth in the immediately preceding paragraph were major in nature and some were minor, but the total effect leads to an inescapable conclusion that they did constitute a serious, substantial and material cause of the delay in the Electric Smith production schedule. Inspection interference was, in itself, a material cause of delay.

■ If a contract requires performances by both parties, one who would assert nonperformance by the other must establish his own performance. 17 Am. Jur. 2d *Contracts* § 355 (1964). Performance is a question of fact. *Terry v. United States Fidelity & Guar. Co.*, 196 Wash. 206, 82 P.2d 532, 119 A.L.R. 1276 (1938).

■■ Reynolds recognizes that, as an appellate court, we cannot retry factual issues. *Evans v. Columbia Int'l Corp.*, 3 Wn. App. 955, 478 P.2d 785 (1970). Reynolds points out, however, that our review of the evidence must persuade us that the findings are supported by *substantial* evidence. A major portion of Reynolds' brief is devoted to an analysis of testimony and evidence which, in Reynolds' view, would compel a finding contrary to that of the trial judge. We agree that the proper focus of our review of the evidence is to ascertain if substantial evidence supports the trial judge's finding. We likewise agree with Reynolds that "[b]y 'substantial evidence' is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Omeitt v. Department of Labor & Indus.*, 21 Wn.2d 684, 686, 152 P.2d 973 (1944). However, our exami-

nation of the record goes no further than to determine whether there *is* substantial evidence to sustain the trial court's findings. *Stutz v. Moody,* 3 Wn. App. 457, 476 P.2d 548 (1970). As an appellate court, we cannot weigh conflicting evidence. *McGarvey v. Seattle,* 62 Wn.2d 524, 384 P.2d 127 (1963).

Our review of the record satisfies us that the finding that Reynolds "substantially and materially contributed to the causes of Electric Smith failing to meet its production schedule" is supported by substantial evidence.

Reynolds further contends, however, that if it be conceded for the purpose of argument that Reynolds did substantially and materially contribute to Electric Smith's failure to meet the required production schedule, Electric Smith nevertheless waived its "right to assert such excuses as a defense for its subsequent breach of contract."

■ In support of this contention, Reynolds relies upon "Revision 4" to the contract, contending that it embodies a modification of the basic contract. Reynolds argues that by performing after agreeing to modify the contract, Electric Smith waived its right to rely upon Reynolds' earlier breach in defense of its own later failure to meet the agreed production schedule.

According to 5 S. Williston, A Treatise on the Law of Contracts § 688 (3d ed. W. Jaeger 1961), it is generally held that when a contract not fully performed on either side is continued in spite of a known excuse, the right to rely upon the known excuse is waived. In the law of contracts, the term "waiver," when used in connection with the required performance of a condition, is usually defined as the voluntary and intentional relinquishment of a known right. *Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964); 5 S. Williston, A Treatise on the Law of Contracts § 678 (3d ed. W. Jaeger 1961); 17 Am. Jur. 2d *Contracts* § 392 (1964). But, as Williston further points out,

> Waiver is a troublesome term in the law. Its use is not confined to conditional contracts, and any satisfactory discussion of it must consider all its applications. It is used with different meanings and there are, therefore,

necessarily conflicting judicial statements as to its requisites.

5 S. Williston, A Treatise on the Law of Contracts § 678 (3d ed. W. Jaeger 1961). 3A A. Corbin, Contracts § 752 (1960) also points out the conceptual inexactness inherent in the term "waiver."

> The term "waiver" has been given various definitions; the fact is that it is used under many varying circumstances. There is no one "correct" definition; it can not be defined without reference to the kind of circumstances to which it is being related. Nor can we determine the legal operation of a "waiver" without knowing the facts that the term is being used to describe.

It is elementary that either party to a contract may waive any of the provisions made for his benefit. 17 Am. Jur. 2d *Contracts* § 390 (1964).

And it is equally clear that a waiver need not be expressly declared by a party to a contract; it may be implied from his conduct.

> Subject to the qualification that to be effectual a waiver of a stipulation in an agreement must not only be made intentionally, but with knowledge of the circumstances, contract provisions may be waived expressly or the waiver thereof may be implied from the acts of the parties.

(Footnotes omitted.) 17 Am. Jur. 2d *Contracts* § 390 (1964).

Whether or not there is an *express* waiver is a question of fact. Whether or not a waiver is to be *implied* must necessarily be a mixed question of fact and law.

> [Waiver] is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved. Occasionally it is proved by the express declaration of the party, or by his undisputed acts or language so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary. Then the waiver is established as a matter of law. Commonly, it is sought to be proved by various species of proofs and evidence, by declarations, by acts and by non-feasance, permitting differing inferences and

which do not directly, unmistakably or unequivocally establish it. Then it is for the jury to determine from the facts as proved or found by them whether or not the intention existed. . . . If the established facts permit reasonable minds to differ as to the inferences or effects from them, a question of fact arises. When facts proved without dispute require the exercise of reason and judgment, so that one reasonable mind may infer that a controlling fact exists and another that it does not exist, there is a question of fact. (*Hirsch v. Jones*, 191 N. Y. 195.)

*Alsens American Portland Cement Works v. Degnon Contracting Co.*, 222 N.Y. 34, 37, 118 N.E. 210 (1917).

 In his memorandum opinion, which we consider insofar as it is consistent with and amplifies the formal findings of fact, *Radosevich v. County Comm'rs*, 3 Wn. App. 602, 476 P.2d 705 (1970), the trial judge said:

> Reynolds contends, however, that Revision 4 modified the contract in November and eliminates all of Electric Smith's excuses as a matter of law. Revision 4 was signed by Mr. LeCount, who was the project manager and vice-president of Electric Smith. It was never signed by the manager of Electric Smith nor was it approved by him.
>
> The Court finds that the original contract was modified in November by action of the parties, but the only item of claimed defect which was being waived was the condition of the cathode flexes. It is clear throughout the testimony that Electric Smith continued to complain of the condition of the materials received and Reynolds authorized Electric Smith to make back charges for correcting defective materials. In this manner Reynolds was, in effect, assenting to retaining the objections to the materials.
>
> Inspection interference was a material cause of the delay and the major part of the interference occurred after the November modification relating to cathode flexes.

On conflicting testimony and evidence, the trial judge concluded that there was no waiver by Electric Smith. To the contrary, he found the facts to be that Electric Smith expressly preserved its right to assert Reynolds' defaults. A similar trial court finding was sustained in *Tiedman v.*

*American Pigment Corp.*, 253 F.2d 803, 807 (4th Cir. 1958):

A default unquestionably may be waived, but where the performance due is of a continuing nature, the promisee need not at once terminate the agreement. If he brings home to the promisor the complaints registered against the promisor's product, and if he continues the relationship on the assurance of better future performance, he is not barred from asserting his rights. In such a case, the successive acceptances of the defective performance would not justify the belief that performance of the character tendered was satisfactory to the promisee, and a waiver of the right to the promised performance cannot be found. [Citations.]

We find substantial evidence to support the trial judge's finding and conclusion that there was no "waiver" by Electric Smith.

Reynolds further assigns error to the trial judge's conclusion that Reynolds itself had, by accepting late performance, waived its right to cancel the contract without a "cure" notice, *i.e.*, a notice of intent to cancel unless performance was brought up to contractual requirements within a reasonable time. Reynolds relies upon a "non-waiver" provision of the contract in support of its position that no cure notice was required. By the terms of the nonwaiver provision, Reynolds' right "to insist upon strict performance" is not waived by reason of any earlier forbearance. We do not reach this issue. The established facts on appeal are: (1) Reynolds was itself in default in performance of its contractual obligations; (2) Reynolds' default substantially contributed to Electric Smith's failure to meet the contractual production schedule; (3) Electric Smith did not waive its right to assert Reynolds' default. While itself in default, Reynolds could not unilaterally cancel the contract, with or without a "cure" notice. By attempting to do so, Reynolds breached the contract and Electric Smith became entitled to damages.

Finally, Reynolds asserts that the trial judge applied the wrong measure of damages. The trial judge found that:

By virtue of [Reynolds'] wrongful termination and

breach of its contract with [Electric Smith], [Electric Smith] has been damaged in the sum of Three Hundred Seventy-Five Thousand Eight Hundred Twenty-Eight Dollars and Ninety-Seven Cents ($375,828.97), representing costs and expenses incurred by [Electric Smith] in production and preparation for production prior to the time of termination, said amount being the net actual allowable outlay of costs and expenses incurred by [Electric Smith] after appropriate credits for payments by [Reynolds] and disposition and sale of specially acquired materials and equipment.

Finding of fact 21.

■ As a general rule, one injured by breach of contract may elect to seek compensatory damages (as did Electric Smith) or stand on the contract and recover anticipated profits. 17 Am. Jur. 2d *Contracts* § 445 (1964).

■ Guidelines for ascertaining compensatory damages are provided by Restatement of Contracts § 333 (1932) as follows:

The amount of the plaintiff's expenditure, reasonably made in performance of the contract or in necessary preparation therefor, is included in compensatory damages, with the following limitations:

(a) Such expenditures are not recoverable in excess of the full contract price promised by the defendant.

(b) Expenditures in preparation are not recoverable unless they can fairly be regarded as part of the cost of performance in estimating profit and loss.

(c) Instalments of the contract price already received and the value of materials on hand that would have been consumed in completion must be deducted.

(d) If full performance would have resulted in a net loss to the plaintiff, the amount of this loss must be deducted, the burden of proof being on the defendant.

The trial judge computed Electric Smith's damages in accordance with the Restatement of Contracts formula. With minor exceptions, he found that the evidence of Electric Smith's actual expenditures was not controverted. He

further found, however, that Electric Smith would have sustained a loss had the contract been carried to fruition. Noting that Reynolds had the burden of proof to establish Electric Smith's probable loss, the trial judge observed in his oral opinion that "[t]he only credible and probative direct evidence relative to [probable loss] was the statement of Gordon Smith that Electric Smith would have lost $50,000 on the job." The trial judge specifically rejected the testimony of Reynolds' witnesses concerning Electric Smith's probable loss.

Finally, the trial judge noted that an exact apportionment of fault between Reynolds and Electric Smith was impossible and determined that $30,000 should be deducted from Electric Smith's proven damages. When damages are not susceptible of exact measurement, absolute certainty is not a bar to recovery. The trier of fact must exercise a large measure of responsible discretion. *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn.2d 96, 330 P.2d 1068 (1958); *Ivy v. Argentieri,* 2 Wn. App. 999, 471 P.2d 122 (1970); 22 Am. Jur. 2d *Damages* § 23 (1965).

We are satisfied that the trial court did not err in fixing damages.

The judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.