FILED
COURT OF APPEALS
DIVISION II

2014 MAR 11 AM 8:40

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of: | No. 43788-1-II |
| JEANNE MARIE HARRIS, | |
| Appellant, | |
| v. | |
| ROGER DUANE KELL, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Jeanne Marie Harris and Roger Duane Kell were married for approximately five years. After they separated, they engaged in four years of litigation over the distribution of approximately $200,000 of property. The trial court primarily awarded the parties their separate property and entered a judgment distributing less than $50,000 in additional assets between the parties. Harris appeals. We affirm the trial court. In addition, due to the intransigent nature of Harris's appeal, we grant Kell's request for attorney fees.

## FACTS

Harris and Kell married on May 3, 2003. Kell was an electrician working out of the union hall. He also owned several rental properties. Harris was a Vancouver city councilwoman and she owned a consulting business. After the parties married, they lived together in Harris's home.

During the marriage, Kell worked as an electrician for several companies including Kraft and Boeing. Harris ran for county commissioner, but lost. Later she opened an Allstate Insurance agency. Although both parties contributed to household expenses (Harris paid the mortgage and Kell paid for utilities), they primarily kept their finances separate. During this period, Harris was incurring large amounts of credit card debt.

Harris and Kell separated on May 31, 2008. The dissolution trial was continued several times due to a variety of reasons, including court congestion and Kell's medical issues. The trial court also continued the trial for a period of time after Kell was diagnosed with cancer. Ultimately, the dissolution did not go to trial until April 2012, four years after Harris and Kell separated.

Immediately after filing her petition for dissolution, Harris filed a motion for temporary spousal maintenance of $3,000 a month. The trial court ordered Kell to pay Harris $1,500 per month. Over the course of the dissolution, maintenance was modified several times and reduced from $1,500 to $1,000, from $1,000 to $775, from $775 to $500, and from $500 to $250. Although the amounts varied, Kell paid Harris maintenance for 39 months, until April of 2012. Over the 39 months that Harris received maintenance, she ran her own insurance agency until she was forced to close the business. After Harris closed the business, she continued her position as a Vancouver city councilwoman, but decided to return to school and pursue another graduate degree rather than find additional employment or take additional jobs through her consulting business.

While the dissolution was pending, Harris declared bankruptcy. In the bankruptcy, Harris discharged the majority of her credit card debt (approximately $260,000), but still had three mortgages on her home and a car loan. Kell entered the marriage with a small amount of manageable debt. However, after the parties separated, he began incurring debt due to attorney fees and maintenance payments.

During the marriage, Harris operated the Allstate Insurance agency. When she began operating the agency, Harris routinely comingled her business and personal finances by making business purchases from her personal account and using business funds to pay for personal expenses. In March 2009, Harris decided to execute two promissory notes in order to align her business and personal finances. She executed one promissory note from the business to herself for approximately $41,000 to be paid in installments of $1,000 a month. She executed a second promissory note from herself to the business for approximately $42,000 to be paid in installments of $50 a month. The promissory note from herself to the business was discharged in her bankruptcy. However, Harris transferred approximately $23,000 from the business to her personal account as payment on the first promissory note.

Allstate redeemed Harris's insurance agency in the fall of 2011, and executed a payout agreement which provided Harris with $5,562 a month for 12 months as compensation for the economic interest she had in her insurance policies. After Allstate redeemed Harris's insurance agency, the trial court ordered Harris to produce discovery regarding the basis for payments and how Allstate calculated the amount of the payments. The trial court also ordered Harris to

3

transfer the Allstate payments to Kell's attorney to be held in Kell's attorney's trust account pending the outcome of the dissolution and property distribution. Harris failed to comply with the court's order to produce discovery. Ultimately, the trial court found Harris in contempt and ordered Harris to provide the discovery by February 24, 2012. Harris also failed to comply with the trial court's contempt order.

Harris's attorney withdrew. After her attorney withdrew, Harris began representing herself pro se and began filing numerous motions with the trial court. The trial court found that most, if not all, of Harris's motions were not grounded in law and, on at least two occasions, ordered Harris to pay Kell's attorney fees for responding to her motions.

A month prior to the scheduled trial date, Harris filed a motion with the court asking to use $2,500 of the Allstate payments held in Kell's attorney's trust account to hire an attorney to represent her at trial. Harris stated that she had already made arrangements with an attorney to represent her at trial. The trial court granted Harris's motion and ordered Kell's attorney to pay $2,500 to Harris's new attorney. The trial court also allowed Kell's attorney to withdraw an additional $2,500 to be paid toward Kell's attorney fees.

A few days before the scheduled April trial date, Harris's new attorney filed a motion to continue the trial, alleging that he would need an extra four weeks to arrange for additional discovery and subpoenas and prepare for trial. The trial court denied the motion based on Harris's prior representation to the court when she requested monies for attorney fees that if the trial court gave her funds for an attorney, she would be ready for the scheduled trial date.

4

On the day of trial, Harris's new attorney moved to present Harris's 1099g income tax statement as evidence of the character of the Allstate payments as severance pay. Kell's attorney moved to exclude the evidence because she had not seen the document, and Harris had not complied with the trial court's earlier contempt order requiring her to provide any evidence regarding the Allstate payments by February 24, 2012. The trial court granted Kell's motion to exclude because of Harris's failure to comply with its contempt order.

The trial court held a two-day dissolution trial in which no other witnesses besides Harris and Kell testified. On April 27, 2012, the trial court issued a written memorandum decision to the parties.[1] On July 6, 2012, the trial court entered its formal written findings of fact, conclusions of law, and decree of dissolution. The trial court granted both parties the separate property that they brought into the marriage. It granted Kell an award for work he did on Harris's home while he lived there, but granted Harris an almost equivalent award for rent due to the disparity between the mortgage payments which she paid and the utilities which Kell paid. The community debt that the couple incurred had been discharged against Harris in her bankruptcy, but the creditor was pursuing collection efforts against Kell. Besides Harris's insurance agency (which the trial court found was community property), the other community property was essentially divided equally.

As to Harris's insurance agency, the trial court made the following findings:

B. Business asset and debts known as, Harris Allstate Insurance Company, including Allstate business and personal property. Said business has been redeemed by Allstate.

---

[1] The day after the trial, the court issued a memorandum decision but apparently failed to include some items of property. The trial court issued an amended memorandum decision including the excluded property the next day.

      1. Personal property (desk, chairs, filing cabinet, fax machine, etc.) was acquired during the marriage and is therefore community property. The 2011 business tax return indicates the value of the property is $6,786, which is adopted by the court. This personal property is awarded to the petitioner, [Harris].

      2. [Harris] testified that she failed to keep separate the finances of personal and business affairs. To properly align personal and business expenses, [Harris] executed two (2) promissory notes on 03/29/2009.

         a. [Harris's] bank records from April 2009 to May 2010 show that Harris Allstate Insurance Company transferred at least $23,000 to [Harris's] personal account. Respondent is entitled to 50% of this value.

         b. Additionally, roughly $42,000 of community property was discharged in bankruptcy. Respondent is entitled to $15,000 of the community asset that was dissipated.

      3. No evidence was produced detailing the specific figures used to reach the monthly Allstate Termination Payout, other than an example formula. The first payment of $5,562.31 was issued on November 2011, and successive monthly payments have been issued in the same amount. It is unclear how long these monthly payments will continue; although it is anticipated they will end after the twelfth payment is received for a total payout of $66,747.72. Due to prior court orders allowing distribution of funds to the parties, $9,797 remains in [Kell's attorney's] trust account through 03/31/2012. Of this amount, [Kell] is awarded $5,388 and [Harris] is awarded $4,408. The remaining payouts (April-October 2012) are to be divided 60/40 in favor of [Harris]. The court retains jurisdiction over any payments received subsequent to October 2012, which shall be deposited into the Cowlitz County Superior Court Clerk's office, pending any further hearing.

Clerk's Papers (CP) at 1482-83.

The trial court awarded one of the couple's dogs, Lily the Chihuahua, purchased during the marriage, to Kell. The trial court also awarded each party items of their personal property that were currently in the possession of the other party.

The trial court entered a decree of dissolution. The decree contained a total judgment of approximately $50,000. However, the trial court ordered Harris's share of the Allstate payments held in Kell's attorney's trust account be applied toward Kell's judgment and the total judgment

was reduced to approximately $35,000. The trial court also included a payment plan which required Harris to pay $500 dollars per month to satisfy the judgment. At the hearing for the presentation of the orders, Harris attempted to object to the trial court's findings of fact line by line. The trial court asked her to simply provide a list of the specific findings to which she objected; however, Harris continued to argue about the facts of the case. The trial court eventually stopped her and told her that if she had additional objections, she could submit them to the court in writing. Harris appeals.

## ANALYSIS

Harris raises 11 assignments of error which can be summarized into the following five issues: the trial court's property distribution, the trial court's denial of Harris's motion to continue, the trial court's characterization of the Allstate payments, the validity of the trial court's final decree of dissolution, and the trial court's decision on attorney fees.

Although Harris raises numerous issues, this is fundamentally a property distribution case. In a dissolution, the trial court is required to order a just and equitable distribution of property and liabilities, whether community or separate. RCW 26.09.080. When determining what is just and equitable, the trial court must consider (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the property distribution is to become effective. RCW 26.09.080(1)-(4). The statute requires that the trial court consider all the relevant factors. RCW 26.09.080.

The trial court has broad discretion to determine what is just and equitable. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). A just and equitable distribution requires fairness over mathematical precision. *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). "Fairness is attained by considering all circumstances of the marriage and by exercising discretion, not by utilizing inflexible rules." *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990). A just and equitable distribution does not necessarily mean an equal distribution. *In re Marriage of DewBerry*, 115 Wn. App. 351, 366, 62 P.3d 525, *review denied*, 150 Wn.2d 1006 (2003). "Under appropriate circumstances [the trial court] . . . need not award separate property to its owner." *In re Marriage of White*, 105 Wn. App. 545, 549, 20 P.3d 481 (2001).

A trial court's decision in a dissolution will rarely be changed on appeal. *In re Marriage of Buchanan*, 150 Wn. App. 730, 735, 207 P.3d 478 (2009) (quoting *In re Marriage of Williams*, 84 Wn. App. 263, 267, 927 P.2d 679 (1996), *review denied*, 131 Wn.2d 1025 (1997)). "Appellate courts should not encourage appeals by tinkering with [dissolution decisions]" because the interests of the parties are best served by the finality of the trial court's decision. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Accordingly, a trial court's property distribution in a dissolution will be reversed "only if there is a manifest abuse of discretion." *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A spouse challenging a trial court's decision in a dissolution bears "the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *Landry*, 103 Wn.2d at 809 (citing *In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97, *review denied*, 473 U.S. 906 (1985).

"The trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion." *Landry*, 103 Wn.2d at 809-10.

### A.    HARRIS'S MOTION TO CONTINUE

Harris argues that the trial court committed reversible error by denying her motion to continue the trial. She asserts that the trial court's decision must be reversed because the trial court failed to produce a complete record of the decision by (1) holding the hearing on the motion to continue off the record and (2) entering the order denying the motion to continue 13 weeks after the trial court denied the motion. She also argues that the trial court abused its discretion by denying the motion to continue on the merits because the trial court refused to allow her attorney additional time to prepare for trial. Harris's claims fail.

Harris's argument that the trial court's failure to produce a complete record of the hearing requires reversal is a meritless assertion. Harris did not object or ask the trial court to make a record until well after the hearing. An insufficient record on appeal precludes review of an alleged error; it does not require reversal. *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994). Harris cites to no authority that provides otherwise. She also fails to cite to any authority supporting her assertion that the trial court's delay in entering the order constitutes reversible error. We do not consider issues that are unsupported by citation to argument or authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). In addition, where a party cites to no authority supporting her assertion, we assume she has none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not

required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Harris's remaining contention that the trial court abused its discretion by denying her motion to continue on the merits fails because Harris is unable to demonstrate prejudice. The denial of a continuance is reversible error upon a showing of both an abuse of discretion and resulting prejudice. *State v. Herzog*, 69 Wn. App. 521, 524, 849 P.2d 1235, *review denied*, 122 Wn.2d 1021 (1993). Harris primarily argues that had the trial court granted the continuance, her counsel would have been able to remedy the discovery violation regarding the tax documents related to the Allstate termination payment plan (TPP) payout, and, as a result, she would have been granted the Allstate TPP payout as her separate property. But as explained below, the evidence was excluded because Harris failed to comply with the trial court's contempt order. A motion to continue would not have cured Harris's violation of the trial court's contempt order; therefore, it is unlikely the evidence would have been admitted even had a continuance been granted. Further, as discussed below, the trial court made a just and equitable distribution of the Allstate payment. Harris was not prejudiced by the trial court's denial of her motion to continue. Therefore, Harris's claim that the trial court committed reversible error by denying her motion to continue lacks merit.

B.     PROPERTY DISTRIBUTION

Throughout her brief, Harris raises issues related to the actual value and distribution of the property. She argues that (1) the trial court improperly assigned value to various pieces of property, (2) the trial court's property distribution was disproportionate, and (3) the trial court erred by awarding Lily the Chihuahua to Kell. She also argues extensively about the distribution

of the Allstate payments, which is discussed below. The trial court did not abuse its discretion, and we affirm the trial court's property distribution.

As an initial matter, Harris's arguments regarding the value of any particular piece of property are not properly raised on appeal. These issues are essentially challenges to the trial court's findings of fact, and Harris has failed to assign error to any of the trial court's findings of fact. RAP 10.3(g) ("A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number."); In fact, Harris fails to even mention these issues in her assignments of error or issues pertaining to assignments of error. Unchallenged findings of fact are verities on appeal. Therefore, we accept the trial court's findings regarding the value of property. With regard to her argument that the trial court's award was disproportionate, Harris states, "[T]he court reviewed the documents provided by [Kell's] counsel and distributed property in a prejudicial manner against [Harris]." Br. of Appellant at 24-25. Although she cites authority for the proposition that a disproportionate award is grounds for reversal, she fails to present any argument actually establishing that the trial court's award was, in fact, disproportionate. Accordingly, we will not take it upon ourselves to dissect what the trial court determined was a just and equitable distribution of property. *Landry*, 103 Wn.2d at 809.

Harris next argues that the trial court abused its discretion by awarding Lily the Chihuahua to Kell. Harris states that she paid for and registered the dog. However, she also states,

> There was no justification to taking [Harris's] dog, whom she had loved and cared for solely, especially in the four years since separation and summarily handing it over to the [Kell] who had obtained his own dog, post separation.

11

No. 43788-1-II

Br. of Appellant at 27-28.

Kell testified that Lily was originally his birthday present and during the marriage, he and Lily went everywhere together. The trial court found Kell's testimony more credible than Harris's testimony. Furthermore, Harris testified that she had trouble paying her vet bills and had attempted to sell some of the dogs because she did not have enough time or money to properly care for them. Given the testimony, it was not unreasonable for the trial court to conclude that Kell had an equal emotional attachment to Lily, as well as a superior ability to care for her. Therefore, the trial court did not abuse its discretion by awarding Lily to Kell.

C.    ALLSTATE PAYMENTS

Several of Harris's assignments of error relate to the Allstate payments. Essentially, she argues that the trial court abused its discretion by excluding additional evidence related to the Allstate payments. Harris also argues that the trial court mischaracterized the Allstate payments as community property. Here, the trial court did not abuse its discretion by excluding Harris's additional evidence. Further, the trial court did not commit reversible error by characterizing the Allstate payments as community property.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 262, 828 P.2d 597, *review denied*, 119 Wn.2d 1020 (1992). Harris argues that the trial court erred by excluding the additional evidence related to the nature of the Allstate TPP payout because Kell had the evidence in March 2012, contrary to the assertion that he had not received it. However, Harris's argument ignores the trial court's contempt order. In the trial court's contempt order, Harris was required to provide all evidence related to the Allstate payments by February 24. Harris failed to comply with the trial court's

12

order. Because the trial court excluded the evidence based on Harris's failure to comply with its earlier order, it did not abuse its discretion by excluding Harris's additional evidence.

Harris also argues that the trial court abused its discretion by failing to consider lesser remedies. However, Harris failed to properly preserve this issue for review at the trial court. When the trial court decided to exclude her evidence, she did not request an alternative sanction, nor did she ask the trial court to make specific findings. Because she failed to raise her arguments before the trial court, or give the trial court an opportunity to correct the alleged error, her claim is not preserved for appeal. *See In re Marriage of Studebaker*, 36 Wn. App. 815, 818, 677 P.2d 7789 (1984) (declining to address an issue because the appellant failed to present the claim in a substantive fashion at the trial court); *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983) (the reasons issues may not be raised for the first time on appeal is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals).

Although Harris purports to argue that the trial court mischaracterized the Allstate payments as community property, her arguments rest on the evidence that was properly excluded by the trial court. However, even if this court assumes that the Allstate payment was Harris's separate property, the error is not reversible. Failure to properly characterize property may be reversible error, but mischaracterization of property is not grounds for setting aside a trial court's property distribution if the division of the property is fair and equitable. *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997) (citing *In re Marriage of Shannon*, 55 Wn. App. 137, 140, 777 P.2d 8 (1989)). Reversal is necessary only when the characterization of the property is crucial to the distribution. *In re Marriage of Langham and Kolde*, 153 Wn.2d 553, 563 n.7, 106 P.3d 212 (2005) (citing *Shannon*, 55 Wn. App. at 142).

Harris inaccurately asserts that the trial court awarded the entirety of the Allstate TPP payout to Kell. In fact, the trial court awarded 40 percent of the Allstate TPP payout to Kell and the remaining 60 percent to Harris. After the property division, Kell received a judgment of approximately $50,000. The trial court then applied Harris's portion of the Allstate TPP payout toward satisfying the judgment. Accordingly, we determine whether the trial court abused its discretion by awarding Kell 40 percent of the Allstate TPP payout.[2]

Here, the Allstate agency was opened during the marriage, and the business itself would be considered community property. *In re the Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). By the time of the dissolution, the business had failed leaving only the business's personal property (desks, chairs, computers, etc.) and the Allstate payments. Further, Harris discharged the promissory note she owed to the business in her bankruptcy; thus, divesting the community business of approximately $42,000. After the parties separated, Harris continued to draw money from the business for her personal use while receiving maintenance payments from Kell. Ultimately, the trial court awarded Harris all the business's personal property (almost $10,000), and 60 percent of the Allstate TPP payout. In addition to the 40 percent of the Allstate TPP payout, Kell was awarded credit for $15,000 of the $42,000 Harris discharged in bankruptcy and half of the $23,000 Harris removed from the business for her personal use. The trial court did not abuse its discretion by awarding Kell 40 percent of the Allstate TPP payout in its distribution of property.

---

[2] To the extent that Harris's issue can be defined as challenging the trial court's decision applying the portion of the Allstate payments awarded to Harris toward Kell's judgment, she fails to present any argument or authority supporting the contention that the trial court lacks the authority to make provisions for enforcing or satisfying a judgment.

D.    THE TRIAL COURT'S DECREE OF DISSOLUTION

Harris challenges the validity of the decree of dissolution itself based on her assertion that certain facts in the decree are inconsistent with the trial court's original written memorandum decision. Harris does not assign error to the findings of fact, nor does she argue that the facts are not supported by substantial evidence. Because a trial court's written memorandum of its decision is not binding, inconsistencies between the memorandum decision and the final orders do not invalidate the decree or require reversal.

"A trial court's oral or memorandum opinion is no more than an expression of its informal opinion at the time it is rendered." *State v. Mallory*, 69 Wn.2d 532, 533, 419 P.2d 324 (1966). The memorandum opinion has no effect unless it is formally incorporated into the trial court's final orders. *Mallory*, 69 Wn.2d at 533-34 (citing *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963); *Clifford v. State*, 20 Wn.2d 527, 148 P.2d 302 (1944)). We consider a trial court's oral or memorandum decision only so far as it is consistent with the trial court's written findings of fact, conclusions of law, and final judgment. *Reynolds Metals Co. v. Elec. Smith Constr. & Equip. Co.*, 4 Wn. App. 695, 701, 483 P.2d 880 (1971) (citing *Radosevich v. County Comm'rs of Whatcom County*, 3 Wn. App. 602, 476 P.2d 705 (1970)). Accordingly, to the extent that the trial court's memorandum opinion is inconsistent with its formal written findings of fact, conclusions of law, and decree of dissolution, it has no effect and is not considered by this court.

To the extent that Harris argues that the trial court's findings of fact, conclusions of law, and decree of dissolution are invalid because the trial court refused to allow Harris to object to each specific line item with which she disagreed by rearguing the facts of the case, her argument

15

lacks merit. First, the trial court gave Harris the opportunity to object in writing, which she did by filing a motion to reconsider on July 13, 2012. Moreover, the trial court's actions did not preclude Harris from appealing the order, nor did it prejudice her on review. An appellant may challenge any finding of fact in the trial court's final order by properly assigning error to the finding on appeal. *See* RAP 10.3(a)(4). We review all challenged findings of fact to determine whether they are supported by substantial evidence in the record. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Our review of the trial court's findings is precluded only when the appellant either (1) fails to challenge the findings of fact or (2) fails to perfect the record. *See In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011) (unchallenged findings of fact are verities on appeal); *Bulzomi*, 72 Wn. App. at 525 (an insufficient trial record precludes review of the alleged error). Accordingly, the trial court's refusal to allow Harris to continue with her line by line factual objections at the hearing for presentation of the final orders did not prejudice her and does not invalidate the trial court's final orders.

Harris also argues that the trial court improperly included a payment plan in the decree of dissolution. She baldly asserts that "[t]here is no authority in law for the court to assign a payment plan." However, she fails to include any supporting argument or authority for this proposition. Br. of Appellant at 28.

The law is clear that the trial court maintains jurisdiction to enforce an award granted in a decree of dissolution. *In re Marriage of Burrill*, 113 Wn. App. 863, 874, 56 P.3d 993 (2002), *review denied*, 149 Wn.2d 1007 (2003). Thus, we decline to review Harris's bald assertion that

the trial court lacked authority to enter a payment plan enforcing the judgment in the decree of dissolution.

E.     ATTORNEY FEES

Harris challenges the trial court's award of limited attorney fees to Kell.[3]  Both parties request attorney fees on appeal under RAP 18.1.  RCW 26.09.140 provides both the trial court and this court the authority to grant attorney fees in a dissolution proceeding.  RCW 26.09.140 states:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

When considering the financial resources of both parties, the court balances the financial need of the requesting party against the other party's ability to pay.  *In re Marriage of Pennamen*, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006).

However, "[a]s an independent ground we may award attorney fees and costs based on intransigence of a party, demonstrated by litigious behavior, bringing excessive motions, or discovery abuses."  *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002), *review denied*, 148 Wn.2d 1011 (2003).  When the award of attorney fees is based on

---

[3] In addition to the award of attorney fees included in the decree of dissolution, the trial court intermittently granted Kell attorney fees for responding to Harris's continual, and often meritless, motions. Harris does not appeal these orders.

17

intransigence, the court does not consider the parties' financial resources. *Wallace*, 111 Wn. App. at 710.

We review the trial court's decision granting attorney fees for abuse of discretion. *In re Marriage of Spreen*, 107 Wn. App. 341, 351, 28 P.3d 769 (2001). The trial court made the following finding regarding Harris's behavior in this case:

> In this case, the petitioner, [Harris], doggedly abused the discovery process and has been found in contempt for that abuse which dramatically increased fees. Additionally, petitioner filed motions that were not well grounded in fact nor law that unnecessarily increased costs to Respondent, [Kell].

CP at 1495. Although Kell had spent approximately $50,000 in attorney fees over the course of the dissolution, the trial court awarded him $6,500 in attorney fees to be paid by Harris. The disparity between the actual cost of Kell's attorney fees and the trial court's award demonstrates that the trial court considered the award based on the amount Harris's intransigent behavior unnecessarily increased Kell's attorney fees. The trial court did not abuse its discretion in its award of attorney fees to Kell, and therefore, we affirm the trial court's award of attorney fees.

Regarding the request for attorney fees on appeal, Harris urges us to consider the parties' financial position and the merit of the issues raised on appeal. Kell alleges this appeal is a continuation of Harris's intransigent behavior and this court should award attorney fees to him regardless of the parties' relative financial situation.

Harris has failed to raise any issue with arguable merit. Many of her arguments are unsupported by authority or have no basis in law. Harris has continued her pattern of intransigent behavior through this appeal. Therefore, we grant Kell's request for attorney fees in a reasonable amount to be determined by a commissioner of this court.

No. 43788-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Penoyar, J.P.T.

_____
Maxa, P.J.